Daniel L. Bonnett (AZ#014127)
Jennifer Kroll (AZ#019859)
Michael M. Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kelli Salazar and Wayne Carpenter, individually and on behalf of other similarly situated individuals,<br><br>　　　　　　Plaintiffs,<br>v.<br><br>Driver Provider Phoenix, LLC; Driver Provider Management, LLC; Driver Provider Leasing, LLC; Innovative Transportation Solutions of Sedona, LLC; Innovative Transportation Solutions of Tucson, LLC; Innovative Transportation Solutions, Inc. (Arizona); Innovative Transportation Solutions, Inc. (Utah); Innovative Transportation Solutions, LLC (Wyoming); Jason Kaplan; Kendra Kaplan; Barry Gross and Jane Doe Gross, husband and wife; and Does 1-10.<br><br>　　　　　　Defendants. | Case No.:<br><br>CLASS ACTION AND COLLECTIVE ACTION COMPLAINT |

1. This class action and collective action lawsuit seeks to redress violations of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") and Arizona wage statutes, including A.R.S § 23-355, on behalf Plaintiffs and similarly situated-situated persons who work or have worked for Defendants as chauffeur drivers (collectively referred to herein as "Plaintiffs" and/or "Class Members").

2. Defendants are privately owned companies operating in Arizona, Utah, and Wyoming as "The Driver Provider" and its owners and officers, Jason Kaplan, Kendra Kaplan, and Barry Gross (collectively referred to herein as "The Driver Provider" or "Defendants").

3. The Driver Provider is owned and operated by related individuals for a common business purpose: providing chauffeured transportation services to Defendants' customers.

4. To accomplish their business purpose, Defendants employ "chauffeur" drivers who, among other things, drive Defendants' vehicles, pick up Defendants' customers at various locations, and drop off Defendants' customers at various locations.

5. Defendants operate in six main markets: Phoenix, Arizona; Sedona, Arizona; Tucson, Arizona; Salt Lake City, Utah; Park City, Utah; and Jackson, Wyoming.

6. Plaintiffs and proposed Class Members are current and former employees of Defendants who work or worked as chauffeur drivers.

7. For at least three years prior to the filing of this Complaint, Defendants knowingly and willfully failed to compensate Plaintiffs and Class Members required overtime wages in violation of the FLSA, 29 U.S.C. § 207, and Arizona wage laws, A.R.S. 23-355.

8. Plaintiffs seek unpaid overtime compensation, liquidated damages, interest, costs, and attorneys' fees under the FLSA, and unpaid overtime compensation, treble damages, attorneys' fees, and costs under A.R.S. 23-355 and applicable statutes governing Plaintiffs' employment relationship.

9. Plaintiffs assert these claims individually and on behalf of other similarly

situated persons under the collective action provisions of the FLSA, 29 U.S.C. § 216(b), and Rule 23 of the Federal Rules of Civil Procedure.

## JURISDICTION AND VENUE

10. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States. Specifically, this action is brought under 29 U.S.C. § 216(b) of the FLSA.

11. This Court has subject matter jurisdiction over Plaintiffs' Arizona wage claims pursuant to 28 U.S.C. § 1367 because these claims are related to Plaintiffs' FLSA claims.

12. Venue is proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(1) because multiple Defendants reside in this District for venue purposes and/or are subject to the Court's personal jurisdiction in that Defendants have substantial contacts with and conduct business in this District.

13. Venue is also proper in the District of Arizona pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims stated herein occurred in this District.

## PARTIES

14. Plaintiff Kelli Salazar is resident of Clark County, Nevada.

15. Plaintiff Salazar worked as a chauffeur driver for Defendants from approximately November 2017 to June 2018.

16. At all relevant times, Plaintiff Salazar was an "employee" within the meaning of 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350.

17. Plaintiff Wayne Carpenter is a resident of Maricopa County, Arizona.

18. Plaintiff Carpenter worked as a chauffeur driver for Defendants from approximately October 2016 to April 2017.

19. At all times relevant, Plaintiff Carpenter was an "employee" within the meaning of 29 U.S.C. § 203(e)(1) and A.R.S. § 23-350.

20. Defendants Driver Provider Phoenix, LLC, Driver Provider Management,

LCC, Driver Provider Leasing, LLC, Innovative Transportation Solutions of Sedona, LLC, and Innovative Transportation Solutions of Tucson, LLC are limited liability companies organized under the laws of Arizona. Defendant Jason Kaplan is the owner, member, and manager of each of these Defendants.

21. Defendant Innovative Transportation Solutions, Inc. (Arizona) is a corporation organized under the laws of Arizona. Defendant Jason Kaplan is the Director, President, CEO, and only shareholder with at least 20% ownership of this corporation.

22. Defendants Driver Provider Phoenix, LLC, Driver Provider Management, LCC, Driver Provider Leasing, LLC, Innovative Transportation Solutions of Sedona, LLC, Innovative Transportation Solutions of Tucson, LLC, and Innovative Transportation Solutions, Inc. (Arizona) have the same principal place of business: 3439 S 40th St., Phoenix, AZ 85040.

23. Defendant Transportation Solutions, Inc. (Utah) is a Utah corporation with its principal office located at 1500 Kearns Blvd., Suite 100, Park City, UT 84068.

24. Innovative Transportation Solutions, LLC is a limited liability company organized under the laws of Wyoming, with a principal office located at 940 W. Broadway, Jackson, WY 83001. Jason Kaplan is identified in business filings with the Wyoming Secretary of State as the President and CEO of Innovative Transportation Solutions, LLC.

25. The true names and capacities, whether individual, corporate, associate or otherwise, of DOES 1 through 10 are unknown to Plaintiffs who therefore sue the DOE Defendants by fictitious names. Plaintiffs will amend this Complaint to state their true names and capacities when they have been ascertained.

26. Defendant Jason Kaplan is a resident of Arizona and the founder, owner, and principal officer of the business entities that operate as "The Driver Provider." At all relevant times, Defendant Jason Kaplan exercised operational control over Plaintiffs, Class Members, and Defendants' business operations, including, among other things, supervision of Plaintiffs and Class Members, and control over scheduling, hiring and firing of employees, payment of employees, vehicle purchases, and the contracts with third parties

3

that form a substantial part of the work performed by Plaintiffs and Class Members.

27. At all relevant times, Defendant Jason Kaplan was and is an "employer" of Plaintiffs and Class Members under 29 U.S.C. 203(d) and A.R.S. 23-350.

28. Defendant Kendra Kaplan is a resident of Arizona and the General Manager of The Driver Provider. At all relevant times, Defendant Kendra Kaplan exercised operational control over Plaintiffs, Class Members, and Defendants' business operations, including, among other things, supervision of Plaintiffs and Class Members, and control over scheduling, hiring and firing of employees, payment of employees, vehicle purchases, and the contracts with third parties that form a substantial part of the work performed by Plaintiffs and Class Members.

29. At all relevant times, Defendant Kendra Kaplan was and is an "employer" of Plaintiffs and Class Members under 29 U.S.C. 203(d) and A.R.S. 23-350.

30. Defendant Barry Gross is a resident of Arizona and the Executive Director of The Driver Provider. At all relevant times, Defendant Gross exercised operational control over Plaintiffs, Class Members, and Defendants' business operations, including, among other things, supervision of Plaintiffs and Class Members, and control over scheduling, hiring and firing of employees, payment of employees, vehicle purchases, and the contracts with third parties that form a substantial part of the work performed by Plaintiffs and proposed Class Members.

31. At all relevant times, Defendant Gross was and is an "employer" of Plaintiffs and Class Members under 29 U.S.C. 203(d) and A.R.S. 23-350.

32. Defendants operated as a single enterprise within the meaning of 29 U.S.C. § 203(r)(1).

33. Upon information and belief, Defendants each grossed more than $500,000 in each of the last six calendar years, individually and collectively.

34. All actions and omissions described in this complaint were made by Defendants directly or through their supervisory employees and agents.

35. Defendants were and are as a matter of law Plaintiffs' "employer" and the

4

1  "employer" of proposed Class Members under the Fair Labor Standards Act and A.R.S. §
2  23-350. Alternatively, each Defendant is a joint employer of Plaintiffs and proposed Class
3  Members with one or more of the other Defendants.

4  36. Each Defendant is directly, jointly, and severally liable for the unpaid wages
5  and damages as alleged herein.

6  37. On information and belief, Defendant Kendra Kaplan is married to
7  Defendant Jason Kaplan and is also named as a Defendant for purposes of binding the
8  Kaplan Marital Community pursuant to applicable community property laws.

9  38. Defendant, Jane Doe Gross, is believed to be the spouse of Defendant, Barry
10 Gross, and is named for purposes of binding the Gross Marital Community pursuant to
11 applicable community property laws.

**COLLECTTIVE ACTION AND CLASS ACTION ALLEGATIONS**

39. Plaintiffs bring Count I pursuant to the FLSA, 20 U.S.C. § 216(b), on behalf of themselves and all similarly-situated persons who work or have worked for Defendants as chauffeur drivers within the last 3 years preceding the commencement of this lawsuit and who elect to opt-in to this action.

40. The proposed FLSA Class includes:

**All current and former employees of The Driver Provider who performed chauffeur services at any time during the three (3) years prior to the commencement of this lawsuit. ("FLSA Class").**

41. Plaintiffs seek permission to give notice of this action pursuant to 29 U.S.C. § 216(b) to all current and former employees of The Driver Provider who performed chauffeur services at any time during the three (3) years prior to the filing of this action.

42. Count II is properly maintainable as a class action under the Federal Rules of Civil Procedure.

43. The Rule 23 Class includes:

**All current and former employees of The Driver Provider who performed chauffeur services in Arizona at any time within the maximum applicable**

5

**statute of limitations preceding the commencement of this lawsuit. (Rule 23 Class).**

44. The FLSA Class Members and Rule 23 Class Members are referred to herein collectively as "Class Members."

45. The proposed Rule 23 Class is so numerous that joinder of all members is impracticable. Upon information and belief, there are more than 200 members of the proposed Rule 23 Class.

46. There are questions of law and fact common to Class Members that predominate over any questions solely affecting individual members of the Class, including but limited to:

   a. Whether one or all of Defendants were Plaintiffs' and Class Members' employers;
   b. Whether one or all of Defendants were required to and failed to pay Plaintiffs and Class Members overtime compensation for all hours worked in excess of 40 hours per week;
   c. Whether one or all of Defendants failed to track and pay Plaintiffs and Class Members for all hours worked;
   d. The number of hours for which payments to Plaintiffs and Class Members were intended to provide compensation;
   e. The nature and extent of Plaintiffs' and Class Members' injuries and the appropriate measure of damages; and
   f. Whether certain exemptions under the FLSA apply to Plaintiffs and Class Members and the extent of such exemptions.

47. The claims of the Named Plaintiffs are typical of the claims of the Class they seek to represent. The Named Plaintiffs and Class Members work or have worked for Defendants, performed the same or substantially similar job duties, and have been subjected to common practices, policies, programs, procedures, protocols, and plans of failing to pay overtime to employees in workweeks wherein employees worked more than

6

40 hours.

48. Defendants acted or refused to act on grounds generally applicable to the Class Members as a whole by engaging in the same violations of law with respect to the Class Members, thereby making any final relief appropriate with respect to the Class as a whole.

49. The Named Plaintiffs will fairly and adequately protect the interests of the Class and do not have interests antagonistic to the Class.

50. The Named Plaintiffs have retained counsel competent and experienced in complex wage and hour litigation and class action litigation.

51. The Class Members have been damaged and are entitled to recovery as a result of Defendants' common and uniform policies, practices, and procedures.

52. A class action is superior to other available methods for the fair and efficient adjudication of this litigation, particularly in the context of wage litigation such as the instant case where individual workers lack the financial resources to vigorously prosecute the lawsuit in federal court against a large transportation company with substantially greater resources. Although the relative damages suffered by individual members of the Class are not *de minimis*, such damages are small compared to the expense and burden of individual prosecution of this litigation.

53. Furthermore, class treatment is superior because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about Defendants' business practices and policies.

54. The Named Plaintiffs and the Class Members have been equally affected by Defendants' failure to pay proper wages.

55. Moreover, Class Members still employed by Defendants may be reluctant to raise individual claims for fear of retaliation.

**FACTUAL ALLEGATIONS**

56. Section 13(b)(1) of the FLSA provides an exemption to overtime requirements for employees who are within the authority of the Secretary of Transportation

7

to establish qualifications and maximum hours of service pursuant to Section 204 of the Motor Carrier Act of 1935 (the "MCA Exemption").

57. However, Congress enacted the Technical Corrections Act ("TCA") in 2008, which amended the scope of the MCA Exemption by providing that overtime compensation ***must be paid*** to "covered employee[s]" despite the provisions of the MCA Exemption. *See* SAFETEA—LU Technical Corrections Act of 2008, PL 110–244, June 6, 2008, 122 Stat. 1572.

58. Specifically, the TCA provides that "Section 7 of the [FLSA] ... shall apply to a covered employee notwithstanding [the MCA exemption]." *See id*. at § 306(a).

59. Section 306(c) of the TCA defines the term "covered employee," in relevant part, as an individual—

> (1) who is employed by a motor carrier or motor private carrier ...;
>
> (2) whose work, in whole or in part, is defined—
>
>> (A) as that of a driver...; and
>>
>> (B) as affecting the safety of operation of motor vehicles weighing 10,000 pounds or less in transportation on public highways in interstate or foreign commerce...; and
>
> (3) who performs duties on motor vehicles weighing 10,000 pounds or less.

*Id*. This provision of the TCA is known as the "Small Vehicle Exception" which excludes covered employees from application of the MCA Exemption.

60. Pursuant to the Small Vehicle Exception, the overtime provisions of Section 7 of the FLSA apply to employees of a motor carrier in any workweek that an employee works, "in whole or part," as a driver affecting the safety of operation of vehicles weighing 10,000 pounds or less. The MCA Exemption does not apply to an employee in such workweeks even though the employee's duties may also affect the safety of operation of motor vehicles weighing more than 10,000 pounds, or other vehicles listed in subsections

(a), (b) and (c) above, in the same workweek.[1]

61. Accordingly, for each workweek in which Plaintiffs and Class Members operated vehicles that weigh 10,000 pounds or less (and/or vehicles with a GVWR of 10,000 or less), and which are designed to transport 8 passengers or less, Plaintiffs and Class Members were required to be paid 1 and ½ their regular rate of pay for all hours worked in excess of 40.

62. As part of their employment with Defendants, Plaintiffs and Class Members have routinely operated vehicles that weigh 10,000 pounds or less (and/or vehicles with a GVWR of 10,000 or less), and which are designed to transport 8 passengers or less.

63. On information and belief, The Driver Provider has a fleet of at least 137 vehicles, including at least 64 sedans and sport utility vehicles (SUVs) that have gross vehicle weights and gross vehicle weight ratings (GVWRs) of 10,000 pounds or less.

64. On information and belief, most of these sedans and SUVs are designed to carry 8 passengers or less.

65. For example, Defendants' website states that its fleet includes sedans such as the Toyota Prius, Lincoln Continental, Lincoln Town Car, and SUVs (which Defendants' website states seat up to 7 passengers including the driver). On information and belief, each of these vehicles has a gross vehicle weight of 10,000 pounds or less, a GVWR of 10,000 pounds or less, and are designed to carry 8 passengers or less.

66. On information and belief, these types of vehicles are driven by Plaintiffs or proposed Class Members in each of Defendants' operating locations (Phoenix, AZ; Tucson, AZ; Sedona, AZ; Salt Lake City, UT; Park City, UT; and Jackson, WY).

67. A substantial portion of Plaintiffs' and Class Members' work involves regularly driving vehicles with gross vehicle weights of 10,000 pounds or less, GVWRs of 10,000 pounds or less, and which are designed to transport 8 passengers or less. Upon information and belief, Plaintiffs and Class Members drove such vehicles in every

---

[1] *See, e.g.* Department of Labor, Wage and Hour Division *Fact Sheet # 19* (https://www.dol.gov/whd/regs/compliance/whdfs19.pdf).

9

workweek while employed by Defendants.

68. On information and belief, the majority of work performed by Plaintiffs and Class Members included driving vehicles with gross vehicle weights of 10,000 pounds or less, GVWRs of 10,000 pounds or less, and which are designed to transport 8 passengers or less.

69. Throughout their employment, Plaintiffs regularly and consistently worked more than 40 hours a week for Defendants.

70. On information and belief, Class Members regularly and consistently worked more than 40 hours a week for Defendants.

71. Despite no exemption from the overtime requirements of the FLSA, Defendants failed to compensate Plaintiffs and Class Members for overtime in workweeks in which Plaintiffs and Class Members worked more than 40 hours and operated vehicles with gross vehicle weights of 10,000 pounds or less, GVWRs of 10,000 pounds or less, and which are designed to transport 8 passengers or less.

72. On information and belief, Defendants also failed to track all hours worked by Plaintiffs and Class Members.

73. In addition to transporting passengers, Plaintiffs' and Class Members' work time includes on call time, travel time to pick up passengers, travel time back the Driver Provider locations to return vehicles, waiting for passengers, greeting passengers outside the vehicle at pick up locations, checking out vehicles, inspecting vehicles, checking-in vehicles, entering vehicle and ride information into software programs, swapping vehicles, fueling vehicles, stocking vehicles with amenities before trips, cleaning out vehicles after trips, picking up and dropping off equipment used during work time (e.g. computer tablets), among other things which Defendants did not count as hours worked and for which Plaintiffs and Class Members were not properly compensated.

74. In all workweeks over the last three years in which Plaintiffs and Class Members operated vehicles designed to transport 8 passengers or less and had gross vehicle weights of 10,000 pounds or less, and/or GVWRs of 10,000 pounds or less, Defendants

failed to compensate Plaintiffs and Class Members for all hours worked and failed to compensate Plaintiffs and Class Members at required overtime premium rates for all hours worked in excess of 40.

75. Plaintiffs and Class Members have been victims of Defendants' common policy and plan that has violated their rights under the FLSA by requiring them to work in excess of 40 hours per week and denying them overtime compensation for all overtime hours worked. At all times relevant, Defendants' unlawful policy and pattern or practice has been willful.

76. All the work performed by Plaintiffs and Class Members was assigned by Defendants and/or Defendants were aware of and suffered and permitted all work including overtime work that Plaintiffs and Class Members performed.

77. As part of its regular business practice, Defendants intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy that violates the FLSA. Defendants' policy and pattern or practice includes but is not limited to: willfully failing to record all of the time that its employees, including Plaintiffs and Class Members, worked for the benefit of Defendants; willfully failing to keep accurate payroll records as required by the FLSA; and willfully failing to pay its employees, including Plaintiffs and Class Members, all wages due at the statutorily-required rates of paying including overtime wages for all hours worked in excess of 40 hours per workweek.

78. Defendants were or should have been aware that the FLSA required it to pay Plaintiffs and Class Members premium overtime pay for all hours worked in excess of 40 hours per workweek. Defendants' failure to pay Plaintiffs and Class Members overtime wages for their work in excess of 40 hours per workweek was willful, intentional, and in bad faith.

79. Defendants' unlawful conduct has been widespread, repeated, and consistent.

## CAUSES OF ACTION

### COUNT I

### Failure to Pay Overtime in Violation of the Fair Labor Standards Act

### (On behalf of Plaintiffs and FLSA Class Members)

80. Plaintiffs re-allege and incorporate by reference all allegations in all preceding paragraphs.

81. Plaintiffs and members of the FLSA Class are non-exempt employees entitled to be paid overtime compensation for all overtime hours worked.

82. In workweeks in which Plaintiffs worked more than 40 hours, Defendants willfully failed to compensate Plaintiffs for all of the time worked in excess of 40 hours and at a rate of at least 1 and ½ times their regular hourly rate in violation of the requirements of Section 7 of the FLSA, 29 U.S.C. § 207(a) (1).

83. Plaintiffs have expressed their consent to make these claims against the Defendants by filing written consent forms, pursuant to 29 U.S.C. § 216(b) (attached hereto as **Exhibit A**).

84. Defendants failed to make a good faith effort to comply with the FLSA with respect to its compensation to Plaintiffs and the FLSA Class.

85. Because Defendants' violations of the FLSA were intentional, willful, and repeated, a three-year statute of limitations applies pursuant to 29 U.S.C. § 255.

86. As a consequence of the willful underpayment of wages alleged above, Plaintiffs and FLSA Class Members have incurred damages and Defendants are indebted to them in the amount of the unpaid overtime compensation, together with interest, liquidated damages, attorneys' fees, and costs in an amount to be determined at trial.

### COUNT II

### Violation of Arizona's Wage Act – A.R.S. § 23-350, et. seq.

### (On Behalf of Plaintiffs and Rule 23 Class Members)

87. Plaintiffs reallege and incorporate by reference all allegations in all preceding paragraphs.

88. Ariz. Rev. Stat. § 23-351 provides in relevant part:

> A. Each employer in this State shall designate two or more days in each month, not more than sixteen days apart, as fixed paydays for payment of wages to the employees . . .
>
> C. Each employer shall, on each of the regular paydays, pay to the employees . . . all wages due the employee up to such a date…
>
> > (3) Overtime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period.

89. Ariz. Rev. Stat. § 23-355 provides in relevant part:

> [I]f an employer, in violation of this chapter fails to pay wages due any employee, the employee may recover in a civil action against an employer or former employer an amount that is treble the amount of the unpaid wages.

90. As a result of Defendants' violations of Ariz. Rev. Stat. § 23-351, Plaintiffs and Rule 23 Class Members have been harmed, have suffered substantial losses, and have been deprived of compensation to which they were entitled and therefore are entitled to an award of the unpaid wages, with prejudgment interest thereon, and treble the amount of such wages, together with attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seek the following relief:

A. A declaration that Defendants are joint employers of Plaintiffs and the Class Members;

B. A declaration that Plaintiffs and the FLSA are non-exempt employees of Defendants for purposes of the FLSA in workweeks in which they are not subject to the MCA exemption;

C. A declaration that Defendants have violated and are violating the FLSA;

D. A declaration that Defendants have violated and are violating Arizona's Wage Act;

     E.    A declaration that Defendants' violations of the FLSA and Arizona Wage Act are willful;

     F.    Awarding Plaintiffs and Class Members wages and overtime payments due to them for their hours worked without proper compensation by Defendants;

     G.    Awarding Plaintiffs and Class Members statutory, compensatory, and liquidated damages, appropriate statutory penalties, and treble damages, to be paid by Defendants.

     H.    Awarding Plaintiffs and Class Members' attorneys' fees and costs of suit;

     I.    That, at the earliest possible time, Plaintiffs be allowed to give notice to the FLSA Class, or that the Court issue such notice, to all persons who are presently, or have at any time during the three years immediately preceding the filing of this suit, up through and including the date of this Court's issuance of court-supervised notice, been employed by Defendants as chauffeur drivers or similarly situated positions. Such notice shall inform them that this civil action has been filed, the nature of the action, and of their right to join this lawsuit if they believe they were denied proper wages.

     J.    Certification of an opt-in class pursuant to the FLSA, 29 U.S.C. § 201, *et seq.*;

     K.    Certification of this case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure;

     L.    Designations of Named Plaintiffs Salazar and Carpenter as representatives of the Rule 23 Class, and the law firm of Martin & Bonnett, PLLC as Class Counsel;

     M.    Reasonable incentive awards for Named Plaintiffs to compensate them for the time they spent attempting to recover wages for the Class and for the risks they took in doing so; and

     N.    Any other relief to which Plaintiffs and Class Members may be entitled.

Respectfully submitted this 6th day of December, 2019.

///

**MARTIN & BONNETT, P.L.L.C.**

By: s/ Daniel L. Bonnett
    Daniel L. Bonnett
    Jennifer Kroll
    Michael M. Licata
    4647 N. 32nd Street, Suite 185
    Phoenix, AZ 85018

*Attorneys for Plaintiffs*