**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelli Salazar, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>Driver Provider Phoenix LLC, et al.,<br><br>    Defendants. | No. CV-19-05760-PHX-SMB<br><br>**ORDER** |

   Pending before the Court is Plaintiffs' Motion for Emergency Relief Authorizing a Curative FLSA Notice, Extending the FLSA Opt-In Deadline, and Barring Defendants from Communications with Rule 23 Class Members, and Putative FLSA Collective Members (Doc. 651). Defendants filed a response (Doc. 660), to which Plaintiffs replied (Doc. 664). The Court heard oral argument on February 7, 2024. After reviewing the parties' arguments and relevant case law, the Court will grant in part and deny in part the Motion.

**I. Background**

   Plaintiffs' Motion arose from allegations that after the supplemental FLSA notice was issued, Driver Provider ("DP") directed many longtime employees to sign the arbitration agreement, known as the Employment Dispute Resolution Agreement (the "Agreement"), as a condition of their continued employment. (*See* Doc. 651 at 2.) Plaintiffs state that the Agreement appears to be the same one DP required employees to sign in 2021. (*Id.* at 3.) The Agreement itself states, "[Y]our execution of this Agreement

1  is a condition of your employment or continued employment with the Company and the
2  benefits and compensation that you receive as an employee constitutes consideration for
3  your acceptance of this Agreement." (Doc. 74 at 20.)  The "Covered Claims" section of the
4  Agreement states that it covers "all disputes relating to or arising out of [the Driver's]
5  employment with the Company or the termination of that employment." (*Id.*)  The "Class
6  and Collective Action Waiver" portion of the Agreement expressly prohibits arbitrations
7  on a class basis.  (*Id.* at 21; Doc. 651-3 at 2.)  Lastly, the end of the Agreement states, in
8  bold font and capital letters, "[T]his Agreement constitutes a waiver of the parties' right to
9  a jury trial and the right to bring or participate in any class or collective action as to Covered
10 Claims."  (Doc. 74 at 23; Doc. 651-3 at 4.)

11         Plaintiffs state that one employee reached out to their counsels' office informing
12 them that they believed they were unable to join the lawsuit because DP was requiring
13 them to sign the Agreement.  (Doc. 651 at 3.)  In response, Plaintiffs' counsel contacted
14 Defense counsel requesting a list of employees they contacted since the Court issued its
15 November 2023 Order.  (*Id.* at 3–4.)  In January 2024, counsel responded and identified
16 employees who DP asked to sign the Agreement.  (*Id.* at 4.)  In contrast, Defendants state
17 that in December 2023, DP realized that some current employees had not signed the new
18 hire paperwork.  (Doc. 660 at 2.)  Due to this, two DP employees began reaching out to
19 current employees to request that they complete this paperwork, which included the
20 Agreement.  (*Id.*)  After Plaintiffs' counsel contacted Defendants' counsel on December
21 19, 2023, Defendants responded that the employee in question was not threatened with
22 termination if they did not sign the Agreement and would not be terminated if they refused
23 to sign it.  (*Id.*)  Defendants state that this policy extended to all employees that were now
24 being asked to sign the Agreement.  (*Id.* at 2–3.)

25         Plaintiffs argue that these actions were improper and request this Court "issue an
26 Order (1) authorizing and approving a curative notice to be issued to all putative collective
27 action members who were sent the supplemental FLSA Notice in December 2023; (2)
28 extending the right to opt-in to this case for thirty days until March 5, 2024; (3) prohibiting

Defendants, their attorneys, agents, representatives or anyone acting on their behalf from communicating with any of its Drivers regarding this case and/or issues directly related to it, including but not limited to, efforts to obtain any waiver, release, opt-out, settlement, or agreement to arbitrate their claims; (4) declaring any purported waiver of rights by any Driver to participate in this case that was obtained by Defendants following the Court's November 15, 2023 inapplicable to the claims in this case; and (5) requiring Defendants to pay all costs associated with the issuance of the curative notice and granting Plaintiffs' reasonable attorneys' fees associated with bringing the instant motion." (Doc. 651 at 4–5.)

## II.    LEGAL STANDARD

The principles that govern communications with putative class members in class actions under Rule 23 also apply to communications with potential opt-in plaintiffs in a collective action brought under the FLSA. *OConner v. Agilant Sols., Inc.*, 444 F. Supp. 3d 593, 600 (S.D.N.Y. 2020); *see also Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171 (1989) (holding that the same justification for exercising control over class communications under Rule 23 apply in collective actions). "Rule 23(d) provides that the court may issue orders that 'require—to protect members and fairly conduct the action–giving appropriate notice to some or all class members of . . . any step in the action,' 'impose conditions on the representative parties,' or 'deal with similar procedural matters.'" *Doe 1 v. Swift Transportation Co.*, No. 2:10-CV-00899 JWS, 2017 WL 735376, at *2 (D. Ariz. Feb. 24, 2017) (citing Fed. R. Civ. P. 23(d)).

"Because of the potential for abuse, a district court has both the duty and the broad authority to exercise control over a class action and to enter appropriate orders governing the conduct of counsel and parties." *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 100 (1981). Courts have "discretionary authority to oversee the notice-giving process" in an FLSA collective action. *Hoffman-La Roche Inc.*, 493 U.S. at 174. "Because formal notice to potential plaintiffs is sent only after conditional certification, pre-certification, ex parte communication with putative FLSA collective action members about the case has an

inherent risk of prejudice and opportunities for impropriety." *OConner*, 444 F. Supp. 3d at 601 (internal quotation marks and citations omitted). "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil*, 452 U.S. at 101.

## III. DISCUSSION

### A. Curative Notice and Deadline

Plaintiffs argue that the Court should issue a curative notice to *all* potential collective action members considering the Agreement and its potential to mislead class members. (Doc. 73 at 15–16.) Defendants argue that this request is overbroad and that if a curative notice is issued, it should only be sent to the twenty-five Drivers who were asked to sign the new hire paperwork after they began employment. (Doc. 660 at 5.) The Court agrees that a curative notice is appropriate. Other courts have issued a corrective notice under similar circumstances. *Swift Transp.*, 2017 WL 735376, at *6 (the court issued a corrective notice to prevent a potential chilling effect on putative class members); *Slavkov v. Fast Water Heater Partners I, LP*, No. 14-CV-04324-JST, 2015 WL 6674575, at *6–7 (N.D. Cal. Nov. 2, 2015) (ordering the parties to submit competing proposed curative notices when it found defendant's communications with class members were misleading); *OConner*, 444 F. Supp. 3d at 607 (holding a telephonic conference to discuss corrective notice after the court determining that the arbitration agreement at issue was not enforceable against putative plaintiffs).

However, the Court agrees that this curative notice should be limited to the twenty-five Drivers at issue. These Drivers, not all DP employees, are the ones impacted by DP suddenly introducing the Agreement. As Plaintiffs have shown, this has created confusion among these Drivers and forced Plaintiffs to clarify the applicability of the Agreement with Defendants. Moreover, whether these twenty-five Drivers must sign the Agreement likely remains unclear to the Drivers themselves. According to Plaintiffs, these Drivers were suddenly asked to sign these documents with no upfront explanation of what the Agreement

1 meant or whether it was optional.  Further, Plaintiffs state that one driver of these twenty-
2 five Drivers was asked to meet with management after being told they would be terminated
3 if they did not sign the Agreement.  (Doc. 651-4 at 2.)  Simply because DP did not act upon
4 its written threat of termination in the Agreement does not negate the fact that the condition
5 was present in the Agreement.  Many employees likely executed the Agreement in response
6 to the condition, ignorant of the fact that the company would not actually have fired them
7 if they refused to execute it.  A plain reading of this text suggests that Drivers that now
8 sign this Agreement can no longer participate in this action.  (*See* Doc. 95.)

9       Each of these instances point to coercion aimed precisely at putative class members.
10 *See Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 263–66 (S.D.N.Y. 2020).
11 However, this potential coercion extends only to the twenty-five Drivers, not any other
12 putative class members.  For these reasons, the Court finds that the potential chilling
13 Agreement's potential chilling effect extends only to those Drivers who were already DP
14 employees and were recently asked to sign the Agreement that—by its plain language—
15 would bar them from participating in this action.  *See Swift Transp.*, 2017 WL 735376, at
16 *6.  Accordingly, remedial relief in the form of a corrective notice for these Drivers is
17 appropriate.  As such, any purported waiver of rights by any of these twenty-five Drivers
18 through signing the Agreement is inapplicable.

19       The Court has reviewed Plaintiffs' proposed curative notice.  (Doc. 651-1.)  At oral
20 argument, Defendants stated that they did not object to this proposed notice.  Accordingly,
21 this proposed curative notice will be utilized.  Additionally, the current opt-in period closed
22 on February 4, 2024.  (*See* Doc. 605.)  The Court will extend this deadline, only for the
23 twenty-five Drivers, an additional thirty days, setting the opt-in period to close on March
24 8, 2024.  However, the Court notes that this extension does not amend the current case
25 schedule or trial date.

26       Finally, Defendants do not object to being responsible for sending the curative
27 notice.  (Doc. 660 at 5.)  They also do not object to bearing the cost of sending this notice.
28 (*Id.*)  However, they request that they be allowed to send the notice via email, "as that is

1. the method The Driver Provider typically uses to communicate with Drivers." (*Id.*) Plaintiffs counter that having Defendants issue the notice "would only invite further improper communications." (Doc. 664 at 9.) Plaintiffs instead request that a third-party administrator be utilized to send the notices through both U.S. mail and email. (*Id.* at 9–10.) The Court finds that continued use of a third-party administrator is appropriate in this circumstance. Once the curative notice is final, Defendants will pay the reasonable costs of the third-party administrator to send the notice to the twenty-five Drivers by U.S. mail and email.

### B. Restriction on Communication and Attorneys' Fees

Plaintiffs also argue that "Defendants, their attorneys, agents, representatives or anyone acting on their behalf" should be barred from communicating with any Drivers regarding this case and/or any issues directly related to it. (Doc. 651 at 5.) Defendants counter that this prohibition would effectively prohibit all communication between DP and its current employees. (Doc. 660 at 5.) Defendants contend that this broad prohibition would include communications regarding pay, working hours, and job duties, and therefore would create an "unworkable situation" where managers could not discuss job details with Drivers. (*Id.*)

"The Court has authority to regulate communications which jeopardize the fairness of the litigation even if those communications are made to future and potential putative class members." *O'Connor v. Uber Techs.*, No. C-13-3826 EMC, 2014 WL 1760314, at *4 (N.D. Cal. May 2, 2014). Here, the Court agrees that communication should be restricted, but not to the broad degree that Plaintiffs' request. The Court will require counsel to submit proposed language for the communication restriction to the Court by Friday, February 9, 2024 at 5:00pm. Counsel may either confer and submit stipulated language or submit separate, competing drafts of the proposed restriction language.

Finally, the Court declines to award attorneys' fees to Plaintiffs.

### IV.   CONCLUSION

For the reasons discussed above,

**IT IS HEREBY ORDERED granting in part and denying in part** Plaintiffs' Motion for Emergency Relief Authorizing a Curative FLSA Notice, Extending the FLSA Opt-In Deadline, and Barring Defendants from Communications with Rule 23 Class Members, and Putative FLSA Collective Members (Doc. 651). The Motion is granted as to Plaintiffs' request for a curative motion as described above. The Motion is also granted as to Plaintiffs' request to extend the opt-in date, but only for the twenty-five Drivers as described above. The Motion is also granted as to Plaintiffs' request that any purported waiver of rights by any of the twenty-five Drivers through their signing of the Agreement is inapplicable. The Motion is denied as to Plaintiffs' request that the Court completely prohibit Defendants' communications with putative class members, however the Court awaits the proposed restriction language as described above. The Motion is also denied as to Plaintiffs' request for attorneys' fees.

**IT IS FURTHER ORDERED** that counsel submit proposed language for the communication restriction to the Court via email by Friday, February 9, 2024 at 5:00 p.m. Counsel may either submit stipulated language or separate, competing drafts of the proposed restriction language, as described above.

Dated this 7th day of February, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge