**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kelli Salazar, et al., | No. CV-19-05760-PHX-SMB |
| Plaintiffs, | **ORDER** |
| v. | |
| Driver Provider Phoenix LLC, et al., | |
| Defendants. | |

Pending before the Court is Plaintiffs' *Daubert* Motion to Exclude the Expert Reports and Testimony of Michael Haugen Pursuant to Fed. R. Evid. 702 (Doc. 704.) Defendants filed a response (Doc. 733), to which Plaintiffs replied (Doc. 751). The Court exercises its discretion to resolve this motion without oral argument. *See* LRCiv 7.2(f) ("The Court may decide motions without oral argument."). After considering the parties' arguments and relevant case law, the Court will deny Plaintiffs' Motion.

**I.   BACKGROUND**

The factual background of this case has been covered extensively in prior Orders. For the sake of brevity, the Court will not repeat it here.

**II.   LEGAL STANDARD**

A party seeking to present an expert's testimony carries the burden establishing that testimony's admissibility. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir. 2007). Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993) govern the admissibility of such testimony. Rule 702 states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. *Daubert* entrusts courts to act as gatekeepers tasked with excluding unreliable expert testimony. 509 U.S. at 597; *see also Elosu v. Middlefork Ranch Inc.*, 26 F.4th 1017, 1024 (9th Cir. 2022) ("Rule 702 tasks a district court judge with ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand.") (cleaned up). *Daubert* applies to an expert's testimony based on "scientific" knowledge, but also to testimony based on "technical" and "other specialized" knowledge. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 141 (1999).

Expert testimony is admissible only if it is relevant and reliable. *Daubert*, 509 U.S. at 589. Expert testimony is "relevant" if it fits the facts of the case and logically advances "a material aspect of the proposing party's case." *Daubert v. Merrell Dow Pharms., Inc.* (*Daubert II*), 43 F.3d 1311, 1315 (9th Cir. 1995). Expert testimony is "reliable" if the expert's opinion is reliably based in the "knowledge and experience of the relevant discipline." *Alaska Rent-A-Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013) (quoting *Primiano v. Cook*, 598 F.3d 558, 565 (9th Cir. 2010)). To assess reliability, courts may consider "(1) whether the theory can be and has been tested, (2) whether the theory has been peer reviewed and published, (3) what the theory's known or potential error rate is, and (4) whether the theory enjoys general acceptance in the applicable scientific community." *Murray v. S. Route Mar. SA*, 870 F.3d 915, 922 (9th Cir. 2017).

Courts have great discretion in determining whether *Daubert*'s specific factors are "reasonable measures of reliability in a particular case." *McClure v. State Farm Life Ins. Co.*, 341 F.R.D. 242, 256 (D. Ariz. 2022) (citing *Kuhmo Tire*, 526 U.S. at 153). Unlike challenges to an expert opinion's relevancy or reliability, challenges to the "correctness" of an opinion go to its weight, not its admissibility. *Messick v. Novartis Pharm. Corp.*, 747 F.3d 1193, 1199 (9th Cir. 2014).

## III. DISCUSSION

### A. Qualifications

Michael Haugen ("Haugen") is a forensic accounting expert. (Doc. 733-1 at 3.) He holds a bachelor's degree and a master's degree in accountancy. (*Id.*) He is a licensed Certified Public Accountant ("CPA") in Arizona, is certified in Financial Forensics by the American Institute of Certified Public Accountants and is a Certified Fraud Examiner. (*Id.*) He has significant experience in conducting financial investigations, measuring commercial damages, and calculating lost earnings and wrongful death losses. (*Id.* at 3–5.) Much of his work as an expert witness consists of consolidating and analyzing large financial data sets. (*Id.* at 7.) His experience has extended to evaluating large sets of payroll data when measuring lost profit claims and evaluating wage and hour data when evaluating lost earnings claims. (*Id.*; *see also* Doc. 733 at 4–5.)

Plaintiffs contend that Haugen is not qualified to testify in this case because he has no prior experience in Fair Labor Standards Act ("FLSA") cases or any experience with class or collective action litigation. (Doc. 704 at 6–7.) Defendants counter that Haugen is not required to have experience testifying in FLSA cases to be qualified to testify here. (Doc. 733 at 5.) Defendants also note that Haugen is not providing any opinions regarding the FLSA's requirements, but rather is providing calculations and analysis of potential unpaid minimum and overtime wages—which he is qualified to provide. (*Id.*)

The Court agrees that Haugen is qualified to testify as an expert. First, there is no requirement that Haugen have previously testified in FLSA cases to testify in the current case. *See Cebrynski v. Wells Fargo Bank* NA, No. CV-21-01965-PHX-DJH, 2024 WL 939975, at \*3 (D. Ariz. Mar. 5, 2024). Moreover, any argument that Haugen is not an FLSA expert or lacks specialized experience with these types of calculations speaks to weight, not admissibility. *See Garcia v. Vitus Energy, LLC*, 605 F. Supp. 3d 1179, 1186 (D. Alaska 2022). Second, Defendants have shown that Haugen has the requisite knowledge and experience to perform the calculations and data analysis at issue. The analysis here falls within his prior experience and will be relevant and helpful to the jury.

*See* Fed. R. Evid. 702. Accordingly, the Court finds that Haugen is qualified to testify as an expert in this case.

### B. Reliability/Prejudice

Next, Plaintiffs argue that Haugen's testimony is unreliable and not grounded in reliable principles or methods. (Doc. 704 at 7–8.) Specifically, Plaintiffs assert that three areas of Haugen's testimony are inadmissible: (1) time between trips, (2) post-trip work time estimates, and (3) pre-trip work time estimates. (*Id.* at 7–16.) Defendants argue that Haugen's analysis and testimony are proper in each of these areas. (Doc. 733 at 7–12.) The Court will discuss each in turn.

#### i. Time Between Trips

First, Plaintiffs argue that Haugen's testimony regarding time between trips is based on arbitrary thresholds that Defendants' attorneys instructed him to apply and is overall not grounded in reliable principles or methods. (Doc. 704 at 7–12.) Plaintiffs further argue that his failure to consider other information renders his methodology unreliable and speculative and shows that he developed his opinions expressly for purposes of testifying. (*Id.* at 10–11.) Defendants counter that Haugen has provided detailed explanations for his calculations and that the assumptions were proper given the focus of his testimony. (Doc. 733 at 7–8.) The Court agrees with Defendants.

To begin, Haugen's report and subsequent declaration provide detailed explanations as to which data he considered. (*See* Doc. 733-1.) Plaintiffs are correct that Haugen did not complete an independent analysis to determine whether drivers were relieved of duty between trips. However, Haugen is *not* an expert on what constitutes working time and non-working time. Rather, he is an accounting expert testifying about his calculations of potential overtime and minimum wages. These calculations naturally require reasonable assumptions—as expert opinions often do. His two sets of calculations are built on separate assumptions regarding trips exceed thirty and sixty minutes, respectively. (Doc. 733-1 at 35–36.) Given Haugen's expertise and the nature of his testimony, these are reasonable assumptions that square with Defendants' theory of the case.

Moreover, Plaintiffs will have the opportunity to attack these assumptions and the resulting calculations on cross-examination and through their own expert testimony. *See Daubert*, 509 U.S. at 596. Plaintiffs also raise concerns about the specific data Haugen failed to consider. (Doc. 704 at 8–10.) However, as mentioned, Haugen provided specific reasons for not including this data, which can also be addressed on cross-examination. (Doc. 733-1.) And lastly, any issues that Plaintiffs have with the supplements to Haugen's report will surely be addressed in Plaintiffs' Motion to Strike. (Doc. 712). Accordingly, the Court will admit Haugen's testimony on this topic.

### ii.     Post-Trip Work Time and Wage Calculations

Next, Plaintiffs argue that Haugen's post-trip work time estimates are inadmissible because his reduction of post-trip work time for trips that end at Sky Harbor is an example of cherry-picking that benefits Defendants that is a violation of Rule 702. (Doc. 704 at 12–13.) Defendants counter that the reduced post-work trip time estimate is consistent with the average estimate between both experts and is consistently applied. (Doc. 733 at 9–10.) The Court agrees. First, Haugen's method is consistently explained and applied, and is therefore not a violation of Rule 702. Further, Haugen's approach is not unreliable simply because it differs from Plaintiffs' expert's analysis. Any issues between the two experts can be explored at trial and goes to weight, not admissibility. *See Senne v. Kansas City Royals Baseball Corp.*, 591 F. Supp. 3d 453, 482–84 (N.D. Cal. 2022). Plaintiffs also argue that Haugen's wage calculations are inadmissible for the same reason. (Doc. 704 at 15.) But again, this overlooks Haugen's explanation and consistently applied method—which of course can be explored on cross-examination. Accordingly, Haugen's testimony on these topics will be admitted.

### iii.     Unfair Prejudice

Plaintiffs also contend that Haugen's testimony is unfairly prejudicial because if the jury heard it, "they would be presented with apparently precise estimates of work time based on a forensic accountant's purportedly careful analysis of certain start and end markers in a database." (Doc. 704 at 15.) Therefore, Plaintiffs contend that the jury "could

believe that the evidence was useful solely on learning of Haugen's expertise and claimed experience." (*Id.*)  Defendants counter that the probative value of Haugen's testimony is not substantially outweighed by unfair prejudice and that any fears of undue weight can be addressed in cross-examination.  Again, the Court agrees.

Here, Haugen's testimony is highly probative, as it goes directly to the determination of Defendants' potential liability.  Plaintiffs' fear that the jury will assign undue weight to Haugen's testimony is well-taken, but is no more true of Haugen than of any expert that takes the stand.  The proper method to undercut weight is effective cross-examination, not exclusion.  Plaintiffs will have every opportunity to undermine Haugen's testimony at cross-examination.  Accordingly, Haugen's testimony will be admitted.

### C. *Mt. Clemens*

Finally, Plaintiffs argue that Haugen's testimony is not permitted under *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946).  (Doc. 704 at 16–18.)  In cases where an employer has not kept accurate records of employees' time, *Mt. Clemens* allows a party to prove an FLSA violation by showing that employees performed work for which they were improperly compensated and producing some evidence to show the amount and extent of that work "as a matter of just and reasonable inference." 328 U.S. at 687.  If the moving party carries that burden, the burden then shifts to the employer "to come forward with evidence of the precise amount of work performed *or* with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 687–88 (emphasis added).  Put another way, *Mt. Clemens* "presupposes that the employer will be in the best position to keep accurate records of an employee's work and should bear the risk that records will be inadequate." *Grimes v. Kinney Shoe Corp.*, 902 F. Supp. 1070, 1074 (D. Alaska 1995) (citing *McLaughlin v. Ho Fat Seto*, 850 F.2d 586 (9th Cir. 1988)).

Plaintiffs assert that Defendants cannot present the "precise amount of work performed" and are therefore limited to presenting evidence that negates "the reasonableness of the inference to be drawn from the employee's evidence." *Id.* at 688.  This misreads *Mt. Clemens*'s holding.  As explained there, Defendants still have the

opportunity to come forward with this evidence to provide the Court with a precise measure of damages. *See id.* And crucially, nothing in the case bars Defendants from presenting their own evidence—including expert testimony—regarding the damages estimate. *See id.* In short, *Mt. Clemens* does not preclude Haugen's testimony.

Additionally, Plaintiffs' other cited cases only support this conclusion. In *Villalpando v. Exel Direct Incorporated*, the court stated that the employer had "not demonstrated that it maintained adequate records" and allowed the employee plaintiffs to use their expert to establish their reasonable inference under *Mt. Clemens*. No. 12-CV-04137-JCS, 2016 WL 1598663, at *12 (N.D. Cal. Apr. 21, 2016). However, the court *did not* hold that the employer could not provide evidence regarding the damage amount. *Id.*

This point is made more clearly in *Scalia v. Paragon Contractors Corporation*, 957 F.3d 1156 (10th Cir. 2020). In *Paragon*, the defendant challenged the plaintiffs' prima facie case, which was based on representative evidence from a sample of employees and therefore proper under *Mt. Clemens*. *Id.* at 1161–63. The employer disagreed with the expert's method of estimates of hours worked and methods of calculation, which included using the mode instead of the mean. *Id.* at 1163–64. The employer put forth its own estimates more favorable to its position, but the court remained unconvinced that these estimates were sufficient to overcome the burden shifting. *Id.* at 1163. However, the court stated that the employer "could have presented testimony from statistical or subject matter experts" to argue against the use of a mode instead of a mean in the statistical analysis. Here, Defendants are using an expert to dispute the method of calculation of potential overtime and minimum wages. This is permissible under *Mt. Clemens*. Moreover, other courts in this district have come to a similar conclusion. *See Collinge v. IntelliQuick Delivery, Inc.*, 2:12-cv-00824 JWS, 2018 WL 1088811, at *2–10 (D. Ariz. Jan. 9, 2018) (allowing competing experts that utilized differing methodologies and assumptions in an FLSA case). Accordingly, Haugen's testimony will be admitted.

IV. **CONCLUSION**

For the above reasons,

      **IT IS HEREBY ORDERED denying** Plaintiffs' *Daubert* Motion to Exclude the Expert Reports and Testimony of Michael Haugen Pursuant to Fed. R. Evid. 702 (Doc. 704).

      Dated this 2nd day of April, 2024.

_____
Honorable Susan M. Brnovich
United States District Judge