**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Kelli Salazar, et al.,

           Plaintiffs,

v.

Driver Provider Phoenix LLC, et al.,

           Defendants.

No. CV-19-05760-PHX-SMB

**ORDER**

Pending before the Court is Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement Agreement and Amendment of Rule 23 Class for Settlement Purposes. (Doc. 777.) The parties also filed the settlement agreement under seal (Doc. 777-1) along with a declaration from Daniel Bonnett. (Doc. 779.) After reviewing the Motion, the attached documents, and the relevant case law, the Court will grant the Motion. The Court will also amend the Rule 23 class for settlement purposes as requested by the parties.

I.    **BACKGROUND**

The procedural history of this case has been covered extensively in previous Orders. Therefore, the Court will only briefly recount the events leading to this settlement.

This lawsuit was initially filed on December 6, 2019. (Doc. 1.) Defendants provide chauffeured transportation services in Arizona, Utah, and Wyoming. Plaintiffs and settlement class members are current or former employees who work or previously

worked as chauffeur drivers for Defendants.  Plaintiffs asserted claims for unpaid overtime and unpaid minimum wages under the Fair Labor Standards Act ("FLSA"), unpaid minimum wages and statutory penalties under the Arizona Minimum Wage Act ("AMWA"), and unpaid overtime and unpaid straight time under the Arizona Wage Act ("AWA").  (Doc. 413.)  The named Plaintiffs asserted their claims individually and on behalf of other similarly situated persons under the collective action provisions of the FLSA.  (*Id.*)

On March 23, 2021, the Court conditionally certified the FLSA claims as a collective action.  (Doc. 91.)  As the litigation continued, the Court granted Plaintiffs' motion for Rule 23 class certification as to the claims for unpaid overtime under the AWA. (Doc. 416; Doc. 427.)  After extensive discovery, the parties filed cross motions for summary judgment.  (Doc. 490; Doc. 497.)  The Court found that Defendants' claimed exemptions under the FLSA were inapplicable, that Defendants violated the FLSA by failing to pay required minimum wages and overtime, and that Defendants violated the AMWA by failing to pay Rule 23 class members required wages and failing to keep track of their hours.  (Doc. 593.)  The Court further determined that three individual Defendants were "employers" under the FLSA and AMWA but held that there were disputed issues of fact as to the time period for which each was individually liable.  (*Id.* at 22–23.)  The Court also found that treble damages were not available under the AWA, and that genuine issues of fact remained for Plaintiffs' straight time claims and the Defendants' defenses under the FLSA.  (*Id.* at 18–20.)

After this and various other related rulings, the following issues remained for trial—the extent of damages owed by Defendants under the FLSA and AMWA, the extent of personal liability of the individual Defendants under the FLSA and AMWA, and named Plaintiffs' claims for unpaid straight time under the AWA.  The parties prepared to begin trial on April 16, 2024.  However, before commencing the Final Trial Management Conference on April 5, 2024, the parties informed the Court that they had reached a settlement.  (Doc. 767.)  Because this case involves a Rule 23 class, this

1  Motion for preliminary approval of the settlement agreement followed.  (Doc. 772.)

2  **II.    LEGAL STANDARD**

3        Class actions require the approval of the district court before settlement. Fed. R.

4  Civ. P. 23(e) ("The claims, issues, or defenses of a certified class—or a class proposed to

5  be certified for purposes of settlement—may be settled, voluntarily dismissed, or

6  compromised only with the court's approval.").  The Ninth Circuit has declared a strong

7  judicial policy that favors settlement of class actions.  *Class Plaintiffs v. City of Seattle*,

8  955 F.2d 1268, 1276 (9th Cir. 1992); *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d

9  539, 556 (9th Cir. 2019).

10        Procedurally, this process moves forward in two steps.   The first step is

11  preliminary approval.   During preliminary approval, the court conducts a preliminary

12  fairness evaluation to determine if notice of the class action settlement should issue to

13  class members and, if applicable, whether the proposed settlement class should be

14  certified.  *See* David F. Herr, *Ann. Manual Complex Lit.* § 21.632 (4th ed. 2023).  The

15  court looks to several factors to gauge fairness and adequacy, including:

16       (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and
         likely duration of further litigation; (3) the risk of maintaining class action
17       status throughout the trial; (4) the amount offered in settlement; (5) the
         extent of discovery completed and the stage of the proceedings; (6) the
18       experience and views of counsel; (7) the presence of a governmental
         participant; and (8) the reaction of the class members to the proposed
19       settlement

20  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (internal citation

21  omitted).  The parties focus their fairness and adequacy analysis to these eight factors.

22  However, some of the eight *Churchill* factors cannot be fully assessed until the final

23  fairness hearing.  *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008).

24        Therefore, at the preliminary approval stage, courts need only evaluate "whether

25  the proposed settlement (1) appears to be the product of serious, informed, non-collusive

26  negotiations, (2) has no obvious deficiency, (3) does not improperly grant preferential

27  treatment to class representatives or segments of the class and (4) falls within the range of

28  possible approval."  *Horton v. USAA Cas. Ins. Co.*, 266 F.R.D. 360, 363 (D. Ariz. 2009)

(cleaned up).  These factors dovetail with the considerations outlined in Rule 23(e).  *See* Fed. R. Civ. P. 23(e)(1)(B)(2).

The second step is the final approval.  During this stage, "[i]f the proposal would bind class members, the court may approve it only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2).  In doing so, the court must consider several factors, including whether: "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the proposal treats class members equitably relative to each other"; and "the relief provided for the class is adequate." *Id.*  When considering whether "the relief provided for the class is adequate," the court should also consider:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3).

*Id.*  After the final fairness hearing, the Court will fully analyze the *Churchill* factors and the above considerations of Rule 23(e) in making its final decision on the settlement.

At this juncture, the Court will review the parties' proposed settlement agreement according to the four preliminary approval considerations and conduct a cursory review of its terms in deciding whether to order the parties to send the proposal to the class members and conduct the final fairness hearing.  *See Alberto*, 252 F.R.D. at 665.  And because this approval is merely provisional, courts grant this approval of a class action settlement where the proposed settlement does not disclose grounds to doubt its fairness and lacks "obvious deficiencies." *In re Vitamins Antitrust Litig.*, No. MISC. 99-127 (TFH), MDL 1285, 2001 WL 856292, at *4 (D.D.C. July 25, 2001) (cleaned up). Overall, the Court is cognizant that "[s]ettlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998).

## III.    DISCUSSION

### A. The Proposed Class

The parties first request the Court approve the settlement class.  (Doc. 772 at 5–6.)  On January 30, 2023, the Court granted preliminary certification of the proposed class under Rule 23 as to Plaintiffs' claims under the AMWA.  (Doc. 427.)  The Court found that Plaintiffs had satisfied Rule 23(a)'s numerosity, commonality, typicality, and adequacy of representation requirements along with Rule 23(b)(3)'s predominance and superiority requirements.  (*Id.*)  There, the Court certified the following class:

> All current and former employees of The Driver Provider who performed chauffeur services in Arizona at any time from December 6, 2016 to the present. Excluded from the class are all owners, managers, supervisors, dispatchers, or other employees whose primary job responsibilities were not the provision of chauffeur services.

(Doc. 427 at 14.)  The parties now wish to modify this class definition to clarify the current and former employees covered by the settlement agreement.  (Doc. 772 at 6.)  The parties' proposed new class definition is:

> All current and former employees of The Driver Provider who performed chauffeur services in Arizona at any time from December 6, 2016 through January 5, 2024 and who were identified by Defendants on the lists of Rule 23 Class Members provided to Plaintiffs on April 26, 2021 and November 29, 2023. Excluded from the class are all owners, managers, supervisors, dispatchers, or other employees whose primary job responsibilities were not the provision of chauffeur services.

(*Id.*)  The new proposed class definition is more specific regarding the employees covered by the settlement agreement through its inclusion of a specific date range and reference to the lists of Rule 23 class members.  (*Id.*)  Crucially, it does not change the class members in any material way.  The Court finds that this proposed definition is materially identical to the previously certified class.  (*Compare* Doc. 427 at 14 *with* Doc. 772 at 6.)  Therefore, the Court will not revisit its Rule 23 analysis or conduct a new analysis on this proposed class.

Accordingly, the Court will grant conditional certification of the settlement class as defined by the parties in the Motion and the settlement agreement and proceed with the

preliminary approval.  (*See* Doc. 772 at 6.)

**B.  The Terms of the Proposed Settlement**

The settlement agreement provides that Defendants will pay $2.5 million to the class members.  (*Id.*)  These funds will be distributed among all the class members and allocated based on each class member's work history.  (*Id.* at 6–8.)  The awarded amounts for each class member are based on an allocation formula created in consultation with Plaintiffs' damages expert.  (*Id.* at 7.)  The underlying assumption of the formula are the "best day" damage calculations.  This "best day" figure is based on the assertion that Defendants failed to compensate drivers for their pre- and post-trip work—including any available overtime—and that all the time in a continuous workday is compensable.  (*Id.* at 19.)  The formula utilized to determine hours worked and wages owed for these awards is the same for all settlement class members.  (*Id.* at 7.)

The allocation plan divides class members into four separate categories.  (*Id.* at 7–11.)  First, the settlement agreement provides for individual settlement awards for the FLSA collective members.  These awards represent 67.12% of the "best day" damages for unpaid FLSA minimum wage damages plus 60.12% of the "best day" damages for unpaid FLSA overtime damages.  (*Id.* at 9.)  Second, the settlement agreement provides individual settlement awards for Rule 23 class members who are not also FLSA collective members for minimum wage claims under the AMWA.  (*Id.*)  The award for these members represents 67.11% of the "best day" damages for unpaid minimum wages under the AMWA.  (*Id.* at 9–10.)  The third category provides individual settlement awards for settlement class members who are both FLSA collective members and Rule 23 class members.  (*Id.* at 10.)  These awards include 67.11% of the damages attributable to unpaid minimum wages under the AMWA that exceed any minimum wage damages under the FLSA.  (*Id.*)  Lastly, the settlement agreement provides individual damages awards to named plaintiffs Lopez and Hanna for their straight time claims under the AWA.  (*Id.*)  These two awards include 67.12% of the amounts determined as damages for their straight time claim.  Altogether, the gross recovery of the 638 drivers is roughly

- 6 -

64.3% of the aggregate "best day" damages, as calculated by Plaintiffs' expert.  (Doc. 773 at 2, 7.)

The settlement agreement also requires Defendants to provide no less than $500,000 for Rule 23 minimum wage claims under the AMWA on a claims-made basis.  (*Id.* at 11.)  This amount is subject to reversion, and the amount paid from this fund will depend on eligible class members submitting claim forms.  (*Id.*)  Lastly, the settlement agreement proposes service awards to the named Plaintiffs and the class members deposed by Defendants.  (*Id.* at 10–11.)

In exchange for this settlement, Defendants will receive a release of claims.  (*Id.* at 11–12.)  This is not, however, a general release of all claims.  Rather, the settlement agreement provides for three categories of released claims.  First, the named Plaintiffs and FLSA collective members will be deemed to release their claims under the FLSA for alleged failure to pay overtime and minimum wages.  (*Id.* at 12.)  Second, named Plaintiffs Lopez and Hanna will be deemed to release their claims for alleged failure to pay straight time under the AWA.  (*Id.*)  And third, named Plaintiffs and Rule 23 class members will be deemed to release all claims for alleged minimum wage violations under the AMWA.  (*Id.*)

Notably, the released claims do not include named Plaintiffs' and Rule 23 Class Members' claims for civil penalties under the AMWA, named Plaintiffs' and putative class members' claims for overtime under the AWA, and putative class members' claims for unpaid straight time under the AWA.  (*Id.* at 12.)  These claims were dismissed by the Court at summary judgment, and Plaintiffs intend to appeal that dismissal.  (*Id.* at 2, 15.)  The settlement agreement specifically allows for appeal of these claims.  (*Id.*)

The settlement agreement also details class members' rights to receive a settlement and provides draft claim forms.  (*Id.* at 12.)  Additionally, the settlement agreement allows any class members to object to the fairness, reasonableness, or adequacy of the Agreement or their individual award.  (*Id.* at 13.)  Class members can file and serve a written objection and appear at the final fairness hearing.  (*Id.*)  Any class

member can also exclude themselves from the settlement class and pursue individual claims against Defendants. (*Id.* at 13–14.) The parties have also agreed to the use of a settlement administrator for issuing the notice, compiling claim forms, and issuing individual awards. (*Id.* at 14.)

The settlement agreement does not resolve the issue of class counsel's attorneys' fees and costs. (*Id.* at 14–15.) Instead, Plaintiffs plan to file a comprehensive motion on fees and costs prior to final approval of the settlement agreement. (*Id.*) No portion of the settlement amount will be paid to class counsel. (*Id.*) Defendants will instead directly pay class counsel upon final determination of attorneys' fees and costs by this Court. (*Id.*)

### C. Preliminary Evaluation of the Proposed Settlement

### 1. *The Settlement Process*

The first consideration pertains to the means and negotiations by which the parties settled the action. *Horton*, 266 F.R.D. at 363. On March 6, 2024, the parties engaged in private, in-person mediation. (Doc. 772 at 5.) The selected mediator was experienced in resolving complex wage and hour disputes such as the instant case. (*Id.*) The parties did not reach an agreement at this mediation. (*Id.*) However, the parties continued to engage in settlement discussions in advance of trial, both directly and with assistance of the same mediator. (*Id.*) In early April, just before the Final Trial Management Conference, the parties agreed to the principal terms of a settlement. (*Id.*)

By the time this settlement was reached, the case had been litigated for over four years. Extensive formal discovery, including the exchange of over 100,000 documents, 27 depositions, and multiple expert reports on damage calculations had been completed. (*Id.* at 23.) No new information that could materially alter the negotiations was set to be disclosed. (*See id.* at 18–20.) Additionally, the extensive motion practice in this case had ended, which resulted in narrowing the issues for trial. The parties were familiar with each other's positions on the remaining issues and were aware of the risks that trial presented. (*See id.*) Taken together, the parties had more than sufficient information to

1   make an informed decision about the settlement.  In other words, the parties stood at the

2   edge of trial and jointly decided to take a step back.

3          Moreover, the parties' recounting of the settlement process demonstrates good

4   faith negotiations and a thorough, non-collusive process.  The parties worked through a

5   qualified mediator and worked diligently to reach this settlement.  *See In re Bluetooth*

6   *Headsets Prods. Liab. Litig.*, 654 F.3d 935, 948 (9th Cir. 2011) (presence of a neutral

7   mediator weighs in favor of a non-collusive process.)  This diligence is underscored by

8   the fact that the parties continued to negotiate in good faith after the initial mediation

9   failed to produce an agreement.  Further, there is no indication of collusion between the

10  parties.  The settlement was reached via an arms-length negotiation after mediation.  The

11  litigation had progressed to a stage that the parties were certainly able to assess the risks

12  of proceeding.  *See Reid v. I.C. Sys. Inc.*, No. CV-12-02661-PHX-ROS, 2018 WL

13  11352039, at *2 (D. Ariz. July 27, 2018), *aff'd*, 795 F. App'x 509 (9th Cir. 2019).

14         In sum, the Court finds that this settlement agreement is the product of serious,

15  informed non-collusive negotiations.  Therefore, the settlement agreement satisfies this

16  first factor.

17         **2.  *Obvious Deficiencies***

18         Next, the Court must consider the terms of the settlement agreement for obvious

19  deficiencies.  These types of deficiencies include "any subtle signs that class counsel

20  have allowed pursuit of their own self-interests to infect the negotiations."  *McKinney-*

21  *Drobnis v. Oreshack*, 16 F.4th 594, 607 (9th Cir. 2021) (quoting *Roes, 1-2 v. SFBSC*

22  *Mgmt., LLC*, 944 F.3d 1035, 1043 (9th Cir. 2019)).  The Ninth Circuit has identified three

23  such "subtle signs," known as the *Bluetooth* factors:

24         (1) when counsel receives a disproportionate distribution of the settlement;
       (2) when the parties negotiate a clear-sailing arrangement, under which the
25       defendant agrees not to challenge a request for an agreed-upon attorney's
       fee; and (3) when the agreement contains a kicker or reverter clause that
26       returns unawarded fees to the defendant, rather than the class.

27  *McKinney-Drobnis*, 16 F.4th at 607–08 (citation omitted); *In re Bluetooth*, 654 F.3d at

28  947 (cleaned up).  District courts must apply the *Bluetooth* factors in examining

preliminary settlements "to smoke out potential collusion." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021).

With respect to the first *Bluetooth* factor, the settlement agreement notes that Plaintiffs will apply for an award of attorneys' fees on a lodestar basis not to exceed $4.25 million and costs not to exceed $400,000. (Doc. 772 at 15.) This, of course, exceeds the $2.5 million settlement amount. Plaintiffs note that "it is commonplace in wage and hour litigation concerning minimum wages and overtime for attorneys' fees to exceed the recovery of lost wages" and cite several cases to support this proposition. (*Id.*) Importantly, the Agreement provides that the fee award will not impact the settlement's finality. (*Id.*) Further, the Court will ultimately decide the amount of attorneys' and costs awarded to class counsel.

Given the fact that the parties will separately brief the issue attorneys' fees and costs issue, the Court cannot find that the distribution is "disproportionate" at this time. Any issue of proportionality of the award to counsel will be addressed once the fees and costs become final. The Court will analyze that final figure in conjunction with the final fairness hearing. Moreover, the Court notes that the draft notice to class members states that class counsel will file a motion for these amounts. Any member of the class can object to these amounts through the formal objection process. (Doc. 772 at 15.) Plaintiffs also will have the opportunity to respond to these objections or comments. (*Id.*)

The second *Bluetooth* factor is inapplicable. There is no indication of any clear-sailing arrangement. In fact, the settlement agreement specifically allows Defendants to oppose Plaintiffs' application for fees and costs. (*Id.*)

As to the third *Bluetooth* factor, the settlement agreement "provides that not less than $500,000 is to be allocated to the Rule 23 minimum wage claims under the AMWA on a claims-made basis and that such amount is subject to reversion." (*Id.* at 11.) Because this reversion applies only to the AMWA claims, it functions in a unique manner. Rule 23 class members that are eligible for an award under these claims that are not also FLSA collective members must submit a claim form to receive their individual

award.  (*Id.*)  If they do not submit a claim form, their individual award will revert to Defendants.  (*Id.*)  Further, Rule 23 class members who are also FLSA collective members also need to submit the form to receive the additional amount between their FLSA award and the AMWA award.  (*Id.*)  If they do not, the additional amounts they would have been awarded under the AMWA will revert to Defendants.  (*Id.*)

This reversion method applies solely to the AMWA claims.  Moreover, the amount to be allocated represents roughly 20% of the total award distribution.  This small amount, as compared to the total award, removes much of the concern of any collusion between the parties.  Additionally, any concern is undercut by the robust notice plan proposed by the parties.  Class members will be notified of this settlement and how to collect their awards via email, mail, and text message.  (*Id.* at 28.)  Rule 23 class members that are eligible for an award for minimum wage claims under the AMWA will be made aware of that fact and will be able to opt-in to receive their awards.  (*See id.*)  Accordingly, the third *Bluetooth* factor weighs in the parties' favor for preliminary approval.

The Court finds that at this stage, there is no indication of collusion between the parties per the *Bluetooth* factors, and therefore no obvious deficiencies in the settlement agreement.  This finding weighs in favor of preliminary approval of the settlement agreement.

### 3. *Preferential Treatment*

The Ninth Circuit has instructed that district courts must be "particularly vigilant" for signs that counsel has allowed the "self-interests" of "certain class members to infect negotiations*." In re Bluetooth*, 654 F.3d at 947.  For that reason, preliminary approval of a class action settlement is inappropriate where the proposed agreement "improperly grants preferential treatment to class representatives."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

In this settlement, any concern about the self-interest of class members comes down to the service awards to the named plaintiffs and the plaintiffs that were deposed.

1    Service awards are "intended to compensate class representatives for work undertaken on
2    behalf of a class" and "are fairly typical in class action cases." *In re Online DVD-Rental*
3    *Antitrust Litig.*, 779 F.3d 934, 943 (9th Cir. 2015) (cleaned up).  The Court must evaluate
4    the named plaintiffs' requested service awards and any other service awards by
5    evaluating "the actions the plaintiff has taken to protect the interests of the class, the
6    degree to which the class has benefitted from those actions . . . [and] the amount of time
7    and effort the plaintiff expended in pursuing the litigation." *Staton v. Boeing Co.*, 327
8    F.3d 938, 977 (9th Cir. 2003); *see also Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958–
9    59 (9th Cir. 2009) ("Such awards are discretionary . . . and are intended to compensate
10   class representatives for work done on behalf of the class, to make up for financial or
11   reputational risk undertaken in bringing the action, and, sometimes, to recognize their
12   willingness to act as a private attorney general.").

13       Here, each of the four named plaintiffs are set to receive service awards of
14   $20,000 each.  (Doc. 772 at 28.)  Additionally, the ten FLSA collective members who
15   were deposed by Defendants within twenty-one days prior to the end of the notice period
16   are set to receive $2,000 each.  (*Id.* at 22; 28.)  Each of these class members contributed
17   time and effort on behalf of the class and faced financial and reputational risk.  Further,
18   these awards are within the range of this Circuit's approved service awards.  *See Singer v.*
19   *Becton Dickinson & Co.*, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D.
20   Cal. June 1, 2010) (approving $25,000 service award for a named plaintiff on a $619,167
21   settlement); *Bolding v. Banner Bank*, No. 2:17-cv-00601-RSL, 2024 WL 755903, at *3
22   (W.D. Wash. Feb. 23, 2024) (approving $20,000 service awards for three named
23   plaintiffs due to their contributions to the case).  In short, case law supports preliminary
24   approval of these awards.  The parties will provide additional support as to these awards
25   at the final approval stage, which the Court will further scrutinize at that time.  (*See* Doc.
26   772 at 29.)  In sum, the Court finds that the settlement agreement does not provide any
27   improper preferential treatment to the class representatives.

28       **4.  *Range of Possible Approval***

To determine whether a settlement "falls within the range of possible approval," courts focus on "substantive fairness and adequacy" and "consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware*, 484 F. Supp. 2d at 1080. Notably, "[t]he fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir.1998) (cleaned up).

Taken together across the categories of class members, the settlement amount reflects approximately 64% of Plaintiffs' "best day" damages. (Doc. 772 at 21.) The parties have provided detailed explanations on how they utilized Plaintiffs' expert's calculations to arrive at figures for each category of class members. (*See id*. at 8–12.) This formula is applied consistently and, in doing so, treats class members equitably to each other. The Court finds that this method is substantively fair and provides that no single group of class members is receiving a windfall. Additionally, no portion of the settlement will be used to pay attorneys' fees or costs. This ensures that the agreed upon amount will be fully paid to the class members. The Court agrees that these recoveries represent a good result for the class members. (*See id.* at 21–22.) Given these figures, this settlement falls within the high end of the range for preliminary approval. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (permitting settlement amount of one-sixth of the potential recovery); *Deaver v. Compass Bank*, No. 13-cv-00222-JSC, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (approving a settlement that provided 10.7% of potential damages); *Rosales v. El Rancho Farms*, No. 1:12-cv-01934-AWI-JLT, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (approving settlement recovery of roughly 27% to 45% of potential damages to class members). These considerations support preliminary approval, and the Court finds that the settlement agreement falls within the range of possible approval.

Accordingly, the Court finds that this settlement merits preliminary approval.

## IV.   CONCLUSION

1   For the above reasons,

2   **IT IS HEREBY ORDERED granting** Plaintiffs' Unopposed Motion for

3   Preliminary Approval of Class Action Settlement Agreement and Amendment of Rule 23

4   Class for Settlement Purposes (Doc. 777).  The Court hereby preliminary approves the

5   settlement agreement as being fair, reasonable, and adequate to the class members.

6   **IT IS FURTHER ORDERED** that the Court's Order on Rule 23 class

7   certification dated January 30, 2023 (Doc. 416) is conditionally modified to clarify those

8   current and former employees of The Driver Provider who are included in the Rule 23

9   class covered by the settlement agreement and to set forth the class period covered by the

10  settlement agreement.  The new class definition is:

11      All current and former employees of The Driver Provider who performed
12      chauffeur services in Arizona at any time from December 6, 2016 through
        January 5, 2024 and who were identified by Defendants on the lists of Rule
13      23 Class Members provided to Plaintiffs on April 26, 2021 and November
        29, 2023. Excluded from the class are all owners, managers, supervisors,
14      dispatchers, or other employees whose primary job responsibilities were not
        the provision of chauffeur services.
15

16  **IT IS FURTHER ORDERED** that the Court hereby approves, as to form and

17  content, the claim form, change of information form, and settlement notice.

18  **IT IS FURTHER ORDERED** that the parties may proceed with providing the

19  settlement notice to class members as described in the settlement agreement.

20  **IT IS FURTHER ORDERED** approving Atticus Administration, LLC

21  ("Atticus") as the settlement administrator to perform those duties and responsibilities as

22  set forth in the settlement agreement.  The Court also hereby approves payment by

23  Defendants to Atticus in the amount of $18,615 for its services and the timing set forth in

24  the settlement agreement.

25  **IT IS FURTHER ORDERED** that an in-person Final Fairness Hearing shall be

26  held on **August 27, 2024 at 10:00 a.m.**  This hearing will be scheduled for two (2) hours.

27  **IT IS FURTHER ORDERED** that the settlement administrator is directed to add

28  the date and time of the Final Fairness Hearing, the deadline for Rule 23 class members

    to submit a claim form, the deadline for Rule 23 class members and collective action

members to exclude themselves from the settlement, the deadline for settlement class members to object to the settlement or the application for attorneys' fees and costs and service awards and other dates and information as applicable to the settlement notice, claim form, and change of information form.

**IT IS FURTHER ORDERED** that the settlement administrator is directed to provide the settlement notice, claim form, and change of information form to each Rule 23 Class Member and each FLSA collective member within seven (7) calendar days following entry of this Order. The settlement administrator is directed to send the Settlement Notice by first-class mail and to also send the settlement notice by email and, if available, text message to all known email addresses and phone numbers of Rule 23 class members and FLSA collective members. Before mailing, the Administrator is directed to perform a National Change of Address (NCOA) search. If settlement notices are returned for insufficient address, the settlement administrator is directed to notify class counsel within one (1) calendar day thereof and to conduct one skip trace and take such other reasonable steps to ensure that the settlement notice, claim form, and change of information form are provided to the Rule 23 class members and FLSA collective members. In addition, the settlement administrator is directed to post the settlement notice, claim form, and change of information form on the website described in Section V of the settlement agreement.

Dated this 10th day of June, 2024.

Honorable Susan M. Brnovich
United States District Judge