Susan Martin (AZ#014226)
Daniel L. Bonnett (AZ#014127)
Jennifer Kroll (AZ#019859)
Michael M. Licata (AZ#033941)
Martin & Bonnett, P.L.L.C.
4647 N. 32nd Street, Suite 185
Phoenix, Arizona 85018
Telephone: (602) 240-6900
Facsimile: (602) 240-2345
smartin@martinbonnett.com
dbonnett@martinbonnett.com
jkroll@martinbonnett.com
mlicata@martinbonnett.com

*Attorneys for Plaintiffs*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kelli Salazar, Wayne Carpenter, Rodney Lopez, and Gregory Hanna, individually and on behalf of other similarly situated individuals,<br><br>                   Plaintiffs,<br><br>v.<br><br>Driver Provider Phoenix, LLC; Driver Provider Leasing, LLC; Innovative Transportation of Sedona, LLC; Innovative Transportation Solutions of Tucson, LLC; Innovative Transportation Solutions, Inc. (Arizona); Innovative Transportation Solutions, Inc. (Utah); Innovative Transportation Solutions, LLC; Driver Provider Management LLC; Jason Kaplan; Kendra Kaplan; Stephen Kaplan and Barbara Kaplan, husband and wife; Barry Gross and Jane Doe Gross, husband and wife; and Does 1-10.<br><br>                   Defendants. | Case No.:  CV19-05760-SMB<br><br>**PLAINTIFFS' APPLICATION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND EXPENSES**<br><br>**(Oral Argument Requested)** |

1

**TABLE OF CONTENTS**

I.   INTRODUCTION ...........................................................................................................1

II.  ARGUMENT .................................................................................................................3

   A.   Entitlement to Fees and Costs...................................................................3

   B.   Legal Standard. ...........................................................................................4

   C.   The Lodestar Calculation. .......................................................................5

     1.   Hours Expended. ...........................................................................5

       (1)  Results Obtained. ...........................................................8

       (2)  Novelty and Difficulty...................................................9

       DP's Vigorous Defense and Litigation Tactics ...................11

     2.   Class Counsel's Hourly Rates Are Reasonable..........................17

     a) The skill required and the experience, reputation, and ability of Counsel.. ...........19

     b) The contingent nature of the fee agreement and undesirability of the case.........20

     c) Time limitations and preclusion of other employment. . ........................................21

     d) The nature and length of the professional relationship ...........................................21

   D.   Counsel is Entitled to Nontaxable Expenses, Including Expert Fees. 22

III. CONCLUSION ............................................................................................................25

<u>TABLE OF AUTHORITIES</u>

Page(s)

Cases

*11333, Inc. v. Certain Underwriters at Lloyd's, London*, No.,
  2018 WL 1570236 (D. Ariz. Mar. 30, 2018) ........................................ 18

*Acevedo v. City of Los Angeles*,
  2016 WL 11525321 (C.D. Cal. Dec. 2, 2016) ...................................... 22

*Aguilar v. Wawona Frozen Foods*,
  2017 WL 2214936 (E.D. Cal. May 19, 2017) ......................................... 9

*Antoninetti v. Chipotle Mexican Grill*,
  643 F.3d 1165 (9th Cir. 2010) .................................................................. 4

*Arizona, Dep't of L., C.R. Div. v. ASARCO, L.L.C.*,
  2011 WL 6951842 (D. Ariz. Sept. 29, 2011) .......................................... 3

*Barjon v. Dalton*,
  132 F.3d 496 (9th Cir. 1997) .................................................................. 17

*Bautista v. Harvest Mgmt. Sub LLC*,
  2014 WL 12579822 (C.D. Cal. July 14, 2014) ........................................ 9

*Bautista-Perez v. Juul Labs*,
  2022 WL 2239838 (N.D. Cal. June 22, 2022) ....................................... 22

*Bellinghausen v. Tractor Supply Co.*,
  306 F.R.D. 245 (N.D. Cal. 2015) ........................................................... 24

*Bennett v. SimplexGrinnell LP*,
  2015 WL 12932332 (N.D. Cal. Sept. 3, 2015) ........................................ 7

*Bjordahl v. Qwest Commc'ns Int'l*, No. 2,
  2010 WL 11570515 (D. Ariz. Sept. 14, 2010) ...................................... 18

*Boconvi v. Velocity Express, LLC*,
  2018 WL 2248988 (N.D. Cal. May 17, 2018) ................................... 12, 22

*Bonnette v. Cal. Health & Welfare*,
  704 F.2d 1465 (9th Cir. 1983) .................................................................. 2

*Brown v. China Integrated Energy Inc.*,
  2016 WL 11757878 (C.D. Cal. July 22, 2016) ...................................... 23

*Burgess v. Premier Corp.*,
  727 F.2d 826 (9th Cir. 1984) .................................................................. 11

*Cabrales v. Cnty. of Los Angeles*,
  935 F.2d 1050 (9th Cir. 1991) ............................................................. 5, 6

*Camacho v. Bridgeport Fin'l, Inc.*,
  523 F.3d 973 (9th Cir. 2008) .................................................................... 6

*Cardoza v. Bloomin' Brands, Inc.*,
  2016 WL 10805752 (D. Nev. Nov. 15, 2016) .......................................... 7

*Carson v. Billings Police Dep't*,
  470 F.3d 889 (9th Cir. 2006) .................................................................. 17

*Castro v. Paragon Indus., Inc.*,
  2021 WL 2042333 (E.D. Cal. May 21, 2021) ......................................... 9

*Cavazos v.  Salas Concrete, Inc.*,
  2022 WL 2918361 (E.D. Cal. July 25, 2022) .......................................... 9

*Chao v. Am. Serv. Sys., Inc.*,

2001 WL 37131280 (D. Ariz. Oct. 9, 2001) ............................................................. 10

*Ching v. Siemens Indus.,*
2014 WL 2926210 (N.D. Cal. June 27, 2014) ......................................................... 20

*City of Cottonwood v. James L. Fann Contracting, Inc.,*
179 Ariz. 185 (Ct. App. 1994) .................................................................................. 3

*City of Riverside v. Rivera,*
477 U.S. 561 (1986) ................................................................................................ 11

*Clarke v. Rollit Motors,*
2018 WL 11304180 (D. Ariz. Jan. 17, 2018) ........................................................... 4

*Contreras v. Armstrong Flooring, Inc.,*
2021 WL 4352299 (C.D. Cal. July 6, 2021) ........................................................... 22

*Copeland v. Marshall,*
651 F.2d 880 (D.C. Cir. 1980) ................................................................................ 11

*Cuff v. Trans States Holdings,*
768 F.3d 605 (7th Cir. 2014) ......................................................................... 3, 11, 12

*De La Riva v. Houlihan Smith & Co.,*
2014 WL 7053772 (N.D. Ill. Dec. 12, 2014) .......................................................... 17

*Deaver v. Compass Bank,*
2015 WL 8526982 (N.D. Cal. Dec. 11, 2015) ........................................................... 9

*Douzat v. Saul,*
2020 WL 3408706 (D. Nev. June 11, 2020) .............................................................. 6

*Farrar v. Hobby,*
506 U.S. 103 (1992) .................................................................................................. 4

*Fisher v. SD Prot. Inc.,*
948 F.3d 593 (2d Cir. 2020) ..................................................................................... 2

*Franco v. Ruiz Food Prod.,*
2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) ........................................................ 20

*Garcia v. Tyson Foods, Inc.,*
2012 WL 5985561 (D. Kan. Nov. 29, 2012) ..................................................... 2, 7, 9

*Gary v. Carbon Cycle Arizona LLC,*
398 F. Supp. 3d 468 (D. Ariz. 2019) ........................................................................ 4

*Gary,*
398 F. Supp. ............................................................................................................. 4

*Glass v. UBS Fin. Servs., Inc.,*
2007 WL 221862 (N.D. Cal. Jan.26, 2007) .............................................................. 9

*Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.,*
2016 WL 6156076 (C.D. Cal. Aug. 16, 2016) .......................................................... 8

*Greko v. Diesel U.S.A., Inc.,*
2013 WL 1789602 (N.D. Cal. Apr. 26, 2013) .......................................................... 9

*Guzman v. Veraz Servs. LLC,*
2022 WL 16640671 (D. Ariz. Oct. 31, 2022) ........................................................ 18

*Harris v. Advanced Care Internal Medicine, PLLC,*
2021 WL 5505412 (9th Cir. 2021) ........................................................................... 4

*Hensley v. Eckerhart,*
461 U.S. 424 (1983) .................................................................................................. 8

*Houser v. Matson,*
447 F.2d 860 (9th Cir. 1971) .................................................................................... 3

*Howe v. Hoffman-Curtis Partners Ltd., LLP,*
  215 F. App'x 341 (5th Cir. 2007) .................................................................. 2

*Huyck v. Shilling-Devaney,*
  2022 WL 16924130 (D. Or. Nov. 14, 2022) ................................................ 22

*In re Immune Response Secs. Litig.,*
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ...................................................... 22

*In re Sumitomo Copper Litig.,*
  74 F.Supp.2d 393 (S.D.N.Y. 1999) ............................................................ 21

*In re Washington Pub. Power Supply Sys. Sec. Litig.,*
  779 F. Supp. 1063 (D. Ariz. 1990) ............................................................ 21

*Isom v. JDA Software Inc.,*
  225 F. Supp. 3d 880 (D. Ariz. 2016) ......................................................... 18

*Johnson v. AutoZone, Inc.,*
  2019 WL 2288111 (N.D. Cal. May 29, 2019) ............................................ 22

*Kelly v. Wengler,*
  822 F.3d 1085 (9th Cir. 2016) ............................................................... 4, 19

*Kerr v. Screen Extras Guild, Inc.,*
  526 F.2d 67 (9th Cir. 1975) ......................................................................... 4

*Ludlow v. Flowers Foods, Inc.,*
  2024 WL 1162049 (S.D. Cal. Mar. 18, 2024) .............................................. 6

*Maddrix v. Dize,*
  153 F.2d 274 (4th Cir. 1946) ..................................................................... 25

*Millea v. Metro-N. R. Co.,*
  658 F.3d 154 (2d Cir. 2011) ........................................................................ 3

*Morales v. City of San Rafael,*
  96 F.3d 359 (9th Cir. 1996) .................................................................. 5, 18

*Morales v. Farmland Foods, Inc.,*
  2013 WL 1704722 (D. Neb. Apr. 18, 2013) ........................................ Passim

*Moreno v. City of Sacramento,*
  534 F.3d 1106 (9th Cir. 2008) ......................................................... 6, 18, 19

*Morris v. Fid. Invs.,*
  2019 WL 4040069 (N.D. Cal. Aug. 26, 2019) ............................................ 23

*Mumford v. Eclectic Inst., Inc.,*
  2016 WL 8711693 (D. Or. Apr. 29, 2016) ................................................. 22

*Mumphrey v. Good Neighbor Cmty.,*
  2023 WL 8702103 (D. Ariz. Dec. 15, 2023) ............................................. 21

*O'Neal v. City of Seattle,*
  66 F.3d 1064 (9th Cir. 1995) ....................................................................... 3

*Overnight Motor Transp. Co. v. Missel,*
  316 U.S. 572 (1942) ..................................................................................... 2

*Parks v. Eastwood Ins. Servs., Inc.,*
  2005 WL 6007833 (C.D. Cal. June 28, 2005) .............................................. 7

*Perdue v. Kenny A. ex rel. Winn,*
  559 U.S. 542 (2010) ......................................................................... 5, 17, 19

*Pickett v. Beard,*
  2014 WL 467330 (E.D. Cal. Feb. 5, 2014) ................................................. 25

*Pittman v. Sw. Bell Tel. L.P.,*

1

  2022 WL 20508220 (W.D. Tex. Aug. 16, 2022) ................................................ 2

2

*Prison Legal News v. Schwarzenegger,*

  608 F.3d 446 (9th Cir. 2010) ....................................................................... 17

3

*Rabin v. PricewaterhouseCoopers LLP,*

  2021 WL 837626 (N.D. Cal. Feb. 4, 2021) ................................................. 21

4

*Rembert v. A Plus Home Health Care Agency LLC,*

  986 F.3d 613 (6th Cir. 2021) .......................................................................... 2

5

*Ridgeway v. Wal-Mart Stores Inc.,*

  269 F. Supp. 3d 975 (N.D. Cal. 2017) ........................................................... 7

6

*Roberts v. City of Honolulu,*

7

  938 F.3d 1020 (9th Cir. 2019) ................................................................. 7, 19

*Rodriquez v. Farmers Ins. Co. of Arizona,*

8

  649 F. App'x 620 (9th Cir. 2016) ........................................................... 23, 24

*Romero v. Steel Roots LLC,*

9

  2024 WL 2389353 (D. Ariz. May 23, 2024) .......................................... 3, 21

10

*Rosales v. El Rancho Farms,*

  2015 WL 4460918 (E.D. Cal. July 21, 2015) ................................................ 9

11

*Rubin-Knudsen v. Arthur Gallagher & Co.,*

  2021 WL 4924765 (C.D. Cal. Mar. 19, 2021) ............................................... 9

12

*Ruiz v. XPO Last Mile, Inc.,*

13

  2017 WL 6513962 (S.D. Cal. Dec. 20, 2017) ............................................. 23

*Shakey's Inc. v. Covalt,*

14

  704 F.2d 426 (9th Cir.1983) ....................................................................... 23

*Strauch v. Computer Scis. Corp.,*

15

  2020 WL 4289955 (D. Conn. July 27, 2020) .......................................... 7, 24

16

*ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC,*

  2020 WL 1694739 (D. Ariz. Apr. 7, 2020) ................................................. 17

17

*Torres v. Gristede's Operating Corp.,*

18

  2012 WL 3878144 (S.D.N.Y. Aug. 6, 2012) .......................................... 6, 12

*Torres v. Pick-A-Part Auto Wrecking,*

19

  2018 WL 3570238 (E.D. Cal. July 23, 2018) ............................................. 22

*TrafficSchool.com v. eDriver, Inc.,*

20

  2012 WL 12949932 (C.D. Cal. May 3, 2012) ............................................ 22

21

*Twin City Sportservice v. Charles O. Finley & Co.,*

  676 F.2d 1291 (9th Cir. 1982) ....................................................................... 5

22

*United Slate, Tile & Composition Roofers Ass'n, Loc. 307 v. G & M Roofing Co.,*

23

  732 F.2d 495 (6th Cir. 1984) ...................................................................... 25

*United States v. City of Twin Falls, Idaho,*

24

  806 F.2d 862 (9th Cir. 1986) ...................................................................... 23

*United Steelworkers of Am. v. Phelps Dodge Corp.,*

25

  896 F.2d 403 (9th Cir. 1990) ...................................................................... 18

26

*Weist v. City of Davis,*

  2021 WL 601103 (E.D. Cal. Feb. 16, 2021) .............................................. 22

27

Statutes

28

  29 U.S.C. § 211(c) ...................................................................................... 24

  29 U.S.C. § 216(b) ................................................................................... 1, 3

A.R.S. § 23-364(G) ................................................................................... 1, 3, 23

A.R.S. § 23-364(D) ......................................................................................... 24

Rules

Fed. R. Civ. P. 23 .............................................................................................. 1

Fed. R. Civ. P. 37(c)(2) ................................................................................... 15

Fed. R. Civ. P. 54(d) ......................................................................................... 3

Regulations

29 C.F.R. § 516.2 ........................................................................................... 24

Ariz. Admin. Code R20-5-1210 ..................................................................... 24

# I.      INTRODUCTION

Pursuant to Fed. R. Civ. P. 23, LRCiv 54.2, the Fair Labor Standards Act ("FLSA") (29 U.S.C. § 216(b)), the Arizona Minimum Wage Act ("AMWA") (A.R.S. § 23-364(G)), the Court's Order preliminarily approving the parties' Settlement Agreement (Doc. 780), and in accordance with the Settlement Agreement (Doc. 772-1), Plaintiffs and Class Counsel respectfully move the Court to grant Class Counsel attorneys' fees in the amount of $4,250,000 and costs and expenses in the amount of $389,385.48. This motion is supported by Declarations of Daniel Bonnett ("Bonnett Decl.") (filed herewith), Harold Lichten ("Lichten Decl."), Michael Petitti ("Petitti Decl."), and Tod Schleier ("Schleier Decl.") (filed as exhibits 8,  9, and 10 to the Bonnett Decl.).

Having considered and issued dozens of rulings,[1] the Court is well acquainted with the lengthy and complex history of this case. Discussion of the case history and settlement negotiations is set forth in Plaintiffs' Motion for Preliminary Settlement Approval (Doc. 777) and not repeated here. As the record reflects and explained below, Counsel's representation of the Class and Collective in the more than 4.5 years of this hard-fought litigation was skilled, unwavering, strategic, and thorough. The results for the Class and Collective Members are excellent and the lawsuit prompted changes in The Driver Provider's ("DP") practices, including payment of overtime, payment of hourly-based wages (instead of so-called "commission"), and the recording of Drivers' worktime, including between trips. This case involved both a FLSA Collective (including a second supplemental FLSA certification) and a Rule 23 Class, with Drivers across three states and five operating locations, numerous corporate entities and individual Defendants, significant discovery, several discovery disputes resolved in Plaintiffs' favor, multiple proceedings regarding DP's arbitration agreement and improper communications with Class Members and prospective Collective Members, and development of a reliable model to prove damages in the absence of legally-mandated time records. Counsel was required to advance hundreds of thousands of dollars in costs and

---

[1] There are nearly 800 docket entries and Plaintiffs count over 140 rulings; Westlaw has published at least 28 of the Court's rulings.

1

expended thousands of hours of work to ultimately bring the FLSA and AMWA claims to a favorable settlement on the eve of trial, with no assurance of success.

As set forth below and in the Bonnett Decl., the work completed, while substantial, was appropriate and necessary to overcome DP's vigorous and aggressive defense and litigation tactics in order to secure the favorable resolution for 694 employees. The results could not have been achieved without the unique combination of experience, attention to detail, expertise, and resolve brought to bear by Class Counsel. This is precisely the type of case where the significant award requested is reasonable and appropriate to ensure attorneys are not dissuaded from representing low wage workers, even in the face of vigorous resistance and the constant pressures of proceeding for years without payment for their time and substantial out-of-pocket expenses. The very purpose of the FLSA's fee-shifting provision is to ensure effective access to representation and to allow even low wage workers the ability to recover "[a] fair day's pay for a fair day's work" and to guard against "the evil of 'overwork' as well as 'underpay.'" *Overnight Motor Transp. Co. v. Missel*, 316 U.S. 572 (1942).

"Given the nature of claims under the FLSA, it is not uncommon that attorney fee requests [] exceed the amount of judgment in the case by *many multiples*." *Howe v. Hoffman-Curtis Partners Ltd., LLP*, 215 F. App'x 341, 342 (5th Cir. 2007) (emphasis added) (citing cases, including*, inter alia*, *Bonnette v. Cal. Health & Welfare*, 704 F.2d 1465, 1473 (9th Cir. 1983) (affirming award of $100,000 in attorneys' fees on $18,455 recovery)). "This asymmetry is unsurprising given that nonexempt employees are generally hourly workers whose rates are well below those charged by attorneys. Indeed, this disparity in resources explains why attorneys' fees are critical to the FLSA's enforcement mechanism." *Pittman v. Sw. Bell Tel. L.P.*, No. 20-01262, 2022 WL 20508220, at *4 (W.D. Tex. Aug. 16, 2022) (citing cases). *See also Fisher v. SD Prot. Inc.*, 948 F.3d 593, 603 (2d Cir. 2020) ("A proportionality rule would also be inconsistent with the remedial goals of the FLSA"); *Rembert v. A Plus Home Health Care Agency LLC*, 986 F.3d 613, 617 (6th Cir. 2021) ("The very reason that the FLSA (and the civil-rights acts) mandate an award of reasonable fees to prevailing plaintiffs is that the monetary value of their claims is often too small to support the cost of litigating them"); *Garcia v. Tyson Foods,*

1   *Inc.*, No. 06-2198, 2012 WL 5985561, at *2 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th

2   Cir. 2014) (affirming fee award based on lodestar of $3.2M with FLSA recovery of $533,011,

3   rejecting the argument "the district court should have reduced the fee award because…the

4   jury awarded only 8% of the damages sought by the [p]laintiffs…, and...the fee award far

5   exceed[ed] the damages award"); *Morales v. Farmland Foods, Inc.*, No. 8:08-504, 2013 WL

6   1704722, at *1 (D. Neb. Apr. 18, 2013) (awarding $2M in fees and $275,000 in costs for a

7   FLSA settlement of $275,000); *Cuff v. Trans States Holdings,* , 768 F.3d 605, 610–11 (7th Cir.

8   2014) ("Fee-shifting statutes…are designed to prevent the potentially high costs of litigation

9   from stifling justified claims."); *Millea v. Metro-N. R. Co.,* 658 F.3d 154, 169 (2d Cir. 2011)

10  ("[T]he district court abused its discretion when it ignored the lodestar and calculated the

11  attorneys' fees as a proportion of the damages awarded.").

12                          **II.     ARGUMENT**

13  **A.    Entitlement to Fees and Costs.**

14          An award of attorney's fees and costs to a successful plaintiff is mandatory under the

15  FLSA. *Romero v. Steel Roots LLC*, No. 23-01033, 2024 WL 2389353, at *1 (D. Ariz. May 23,

16  2024) (citing *Houser v. Matson*, 447 F.2d 860, 863 (9th Cir. 1971)). *See* 29 U.S.C. § 216(b) ("The

17  court in such action shall, in addition to any judgment awarded to the plaintiff or plaintiffs,

18  allow a reasonable attorney's fee to be paid by the defendant, and costs of the action."). The

19  AMWA also provides that "[a] prevailing plaintiff shall be entitled to reasonable attorney's

20  fees and costs of suit." A.R.S. § 23-364(G). *See also* Fed. R. Civ. P. 54(d) & LRCiv 54.1(d).

21  Attorneys' fees are also recoverable for unsuccessful claims when they are related to the

22  successful claims. *See O'Neal v. City of Seattle*, 66 F.3d 1064, 1069 (9th Cir. 1995); *Arizona, Dep't*

23  *of L., C.R. Div. v. ASARCO, L.L.C.*, No. 08-441, 2011 WL 6951842 (D. Ariz. Sept. 29, 2011),

24  *aff'd*, 543 F. App'x 702 (9th Cir. 2013), *adhered to on reh'g en banc,* 773 F.3d 1050 (9th Cir. 2014).

25  *Accord City of Cottonwood v. James L. Fann Contracting, Inc.*, 179 Ariz. 185, 195 (Ct. App. 1994).[2]

26          "[A] plaintiff 'prevails' when actual relief on the merits of his claim materially alters

27  _____

28  [2] Counsel is not seeking fees at this juncture for drafting and responding to motions solely
    focused on claims under the Arizona Wage Act ("AWA"). Consistent with the Settlement
    Agreement, Counsel reserves the right to seek such fees if the claims are reinstated on appeal.

                                    3

the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff." *Farrar v. Hobby*, 506 U.S. 103, 111-12 (1992).  Here, Plaintiffs obtained summary judgment that, *inter alia*, DP violated the FLSA (both minimum wage and overtime requirements) and the AMWA (recordkeeping and minimum wage requirements), leaving the extent of damages on these claims to be decided at trial. (Doc. 593). Plaintiffs then settled all claims that remained for trial, including the collective claims under the FLSA, class claims under the AMWA, and Named Plaintiffs' straight time claims under the AWA. Plaintiffs, therefore, are the prevailing party under these statutes and are entitled to recover their reasonable attorneys' fees and costs. *See Harris v. Advanced Care Internal Medicine, PLLC*, 2021 WL 5505412, at *1 (9th Cir. 2021) ("Because the settlement agreement covered Harris's claims under each of the three statutes [(FLSA, AMWA, and AWA)], she necessarily prevailed under all three statutes and was therefore entitled to fees under the FLSA and AMWA.").[3]

**B.    Legal Standard.**

"To calculate the appropriate amount of fees under the FLSA, the Court must use the usual lodestar method." *Clarke v. Rollit Motors*, No. 16-04058, 2018 WL 11304180, at *2 (D. Ariz. Jan. 17, 2018) (citing *Antoninetti v. Chipotle Mexican Grill,* 643 F.3d 1165, 1176 (9th Cir. 2010) ("[U]nder federal fee-shifting statutes the lodestar approach is the guiding light in determining a reasonable fee.")); *accord Gary*, 398 F. Supp. at 485 ("To determine a reasonable attorneys' fee under FLSA, the Court uses the lodestar method."). The lodestar method is a two-step process. "First, a court calculates the lodestar figure by multiplying the number of hours reasonably expended on a case by a reasonable hourly rate." *Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016). The resulting lodestar figure is "a presumptively reasonable fee." *Id.* Second, "the district court then assesses whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr*[4] factors that are not already subsumed in the initial lodestar calculation." *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).

---

[3] Counsel is also entitled to reasonable fees for preparing and presenting this motion. *Gary v. Carbon Cycle Arizona LLC*, 398 F. Supp. 3d 468, 480 (D. Ariz. 2019). *See* LRCiv 54.2(c)(2).
[4] *Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975).

The twelve *Kerr* factors are: (1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service, (4) the preclusion of other employment, (5) the customary fee, (6) whether the fee is contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases. *Id.* These factors correspond to those in LRCiv 54.2(c). The factors subsumed in the reasonable hours component or rate component of the lodestar calculation are the novelty and complexity of the issues, the skill and experience of counsel, the results obtained, and the contingent nature of the fee agreement. *Morales*, 96 F.3d at 364 n. 9.

While the lodestar is presumptively reasonable, exceptional circumstances may support an enhancement where "the lodestar does not adequately take into account a factor that may properly be considered in determining a reasonable fee." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–54 (2010). In *Perdue*, for instance, the Court noted that an enhancement may be appropriate where the method used in determining the hourly "does not adequately measure the attorney's true market value"; where "the attorney's performance includes an extraordinary outlay of expenses" in protracted litigation; or where the "attorney's performance involves exceptional delay in the payment of fees." *Id.* at 553-56.

**C.     The Lodestar Calculation.**

**1.   Hours Expended [*Kerr* factors 1, 12 & LRCiv 54.2(c)(3)(A), (M)].**

The prevailing party is "entitled to recover a reasonable attorneys' fee for every item of service which, at the time rendered, would have been undertaken by a reasonable and prudent lawyer to advance or protect his client's interest." *Twin City Sportservice v. Charles O. Finley & Co.*, 676 F.2d 1291, 1313 (9th Cir. 1982). *See Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1053 (9th Cir. 1991) ("If a plaintiff ultimately wins on a particular claim, she is entitled to all attorney's fees reasonably expended in pursuing that claim—even though she may have

suffered some adverse rulings.").[5] "The reasonableness of hours expended depends on the specific circumstances of each case." *Douzat v. Saul*, No. 2:17-01740, 2020 WL 3408706, at *2 (D. Nev. June 11, 2020) (citing *Camacho v. Bridgeport Fin'l, Inc.*, 523 F.3d 973, 978 (9th Cir. 2008)). "By and large, the court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1112 (9th Cir. 2008) (noting that "[i]t must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees").

Here, Counsel has documented more than 8,000 hours expended on this case through July 31, 2024. Bonnett Decl. ¶¶ 56-57.  After deducting fees primarily attributable to the AWA motions and after exercising further billing judgment, Counsel has reduced their fees by approximately 5%. *Id.* at ¶ 48. Class Counsel's lodestar as of July 31, 2024 is $ 4,200,448.10 based on 7,765.2 hours, but does not include fees for work not yet completed, including work on this fee application or motion for final settlement approval, or responding to settlement administration inquiries. Counsel will supplement this request with the motion for final settlement approval, which will establish the fee request is lower than the lodestar. *Id.* ¶ 57. *See also* Bonnett Decl. ¶ 113; Lichten Decl. ¶¶ 14-15; Schleier Decl. ¶ 15. The hours expended here are *well below* or comparable to similar cases (*Kerr* factor 12), for example:

- *Ludlow v. Flowers Foods, Inc.*, No. 3:18-01190, 2024 WL 1162049, at *8 (S.D. Cal. Mar. 18, 2024) (misclassification case with 486 total Rule 23 class and FLSA collective members settled after summary judgment, but before trial; court found lodestar to be $6,389,537 based on 11,721.60 hours and then awarded a 2.86 multiplier for $18.3M attorneys' fees);

- *Torres v. Gristede's Operating Corp.*, No. 04-3316, 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) (over 15,000 hours before settling on eve of trial,

---

[5] "Rare, indeed, is the litigant who doesn't lose some skirmishes on the way to winning the war. Lawsuits usually involve many reasonably disputed issues and a lawyer who takes on only those battles he is certain of winning is probably not serving his client vigorously enough; losing is part of winning." *Cabrales*, 935 F.2d at 1053.

awarding $3.4M in fees ($4.6M when adjusted to 2024 dollars)[6] and $442,609.85 in costs ($603,000 adjusted to 2024 dollars) including over $300,000 in expert costs);

- *Morales v. Farmland Foods, Inc.*, No. 8:08-504, 2013 WL 1704722, at *1-2 (D. Neb. Apr. 18, 2013) (8,407 hours reasonable in 4.5-year FLSA case with <u>$275,000 settlement</u>, court determined reasonable fees to be $2M ($2.7M in 2024 dollars));

- *Garcia v. Tyson Foods, Inc.*, No. 06-2198, 2012 WL 5985561, at *2 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) (10,253 hours in FLSA case litigated through trial with $3.2M lodestar, $220,500 in costs, and <u>recovery of only $533,011</u>);

- *Strauch v. Computer Scis. Corp.*, No. 3:14-956, 2020 WL 4289955, at *19 (D. Conn. July 27, 2020) (5-year FLSA and Rule 23 misclassification case with 900 class members, two-week trial, 20,607 hours, $7.7M lodestar (after 12% reduction), $354,500 in costs);

- *Ridgeway v. Wal-Mart Stores Inc.*, 269 F. Supp. 3d 975, 993 (N.D. Cal. 2017) (FLSA and Rule 23 case litigated through judgment involving 839 drivers, $6,491,662 lodestar ($8.2M in 2024 dollars), over 10,000 hours, with a 2x multiplier and $1,734,606 in costs);

- *Cardoza v. Bloomin' Brands, Inc.*, No. 213CV01820, 2016 WL 10805752, at *3 (D. Nev. Nov. 15, 2016) (7,500 hours in FLSA misclassification case, awarding $449,873 in costs and <u>counsel's reduced request</u> of $1.89M ($2.5M in 2024 dollars) from $3.2M);[7]

- *Bennett v. SimplexGrinnell LP*, No. 11-01854, 2015 WL 12932332, at *6 (N.D. Cal. Sept. 3, 2015) ($3,184,823.50 lodestar ($4.2M in 2024 dollars) with 6,845.99 hours expended on state wage class action with 533 class members);

- *Parks v. Eastwood Ins. Servs., Inc.*, No. SACV02-507, 2005 WL 6007833, at *9 (C.D. Cal. June 28, 2005), *aff'd in part, rev'd in part on other grounds,* 240 F. App'x 172 (9th Cir. 2007) (5,000 hours over 3 years before settlement reasonable in FLSA collective with 157 employees).

   **a)  The results obtained and the novelty and difficulty of the case, including the vigorous defense mounted by DP, support the hours expended.**

---

[6] *See Roberts v. City of Honolulu*, 938 F.3d 1020, 1024 (9th Cir. 2019) (abuse of discretion to determine prevailing rate based on rates awarded years earlier). Throughout this brief, reference to 2024 dollars is based on the U.S. Bureau of Labor Statistics Inflation Calculator: https://www.bls.gov/data/inflation_calculator.htm

[7] Declarations filed in *Cardoza* stated there were over 7,500 hours expended.

**(1)   Results Obtained [*Kerr* factor 8 & LRCiv 54.2(c)(3)(H), (I)].**

"*Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." Hensley v. Eckerhart*, 461 U.S. 424, 435-36 (1983). Here, Class Counsel vindicated the rights of over 694 employees who had been misclassified and denied basic protections of minimum wage and overtime for decades. Counsel obtained summary judgment on liability as to their FLSA claims, including violation of minimum wage and overtime requirements, defeated both of DP's asserted exemption defenses, obtained summary judgment on the AMWA as to unpaid minimum wages and recordkeeping violations, and obtained an order that Jason Kaplan, Kendra Kaplan, and Barry Gross met the requirements to be considered employers under the FLSA. (Doc. 593). This required defending against multiple motions for decertification, including convincing the Court to reconsider and reverse the initial decertification of the FLSA Collective. (Docs. 585, 604).

Counsel's efforts also led DP to begin paying overtime, to amend its timekeeping practices to account for work done between trips, and to amend its compensation structure to pay Drivers hourly rates (as opposed to so-called "commission"). Bonnett Decl. ¶ 22. These results will continue to prospectively benefit Class Members and others who work for DP. *See Good Morning to You Prods. Corp. v. Warner/Chappell Music, Inc.*, No.134460, 2016 WL 6156076, at *3 (C.D. Cal. Aug. 16, 2016) ("Even assuming that we cannot ascertain the precise dollar amount that the settlement will [benefit] class members, we cannot ignore the settlement's prospective benefits when determining the reasonableness of the fee request.").

As to the settlement specifically, the gross recovery for the Settlement Class is approximately 64.3% of the aggregate "best day" damages as calculated by Plaintiffs' expert and is approximately 67% more than the $1.5M offer of judgment made by DP just three days prior to agreeing to the principal terms of the settlement and substantially more than the damages estimated by DP's expert. (Doc. 704-3); (Doc. 773 at ¶ 20). DP also has to pay the employer tax contributions and all settlement administration costs.

The settlement is an excellent result, particularly considering that no portion of the Settlement Amount will be used to pay Class Counsel's attorneys' fees or costs and protects Class Members' rights to appeal the dismissal of the AWA and AMWA civil penalty claims.

Bonnett Decl. ¶14-21; Lichten Decl. ¶13; *see Rubin-Knudsen v. Arthur Gallagher & Co.,* No. 186227, 2021 WL 4924765, at *6, *7 (C.D. Cal. Mar. 19, 2021) (finding 62.6% recovery <u>prior to payment of attorneys' fees</u>, or 41% net recovery, to be "an <u>exceptional</u> result for the class") (emphasis added); *Aguilar v. Wawona Frozen Foods*, No. 115-00093, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017) (47% of total possible recovery <u>before payment of attorneys' fees</u> was "far greater than the percentage recovered in many other wage-and-hour class actions heard in federal courts in this circuit" and "an above benchmark attorney fee award") (citing cases); *Bautista v. Harvest Mgmt. Sub LLC*, No. 1210004, 2014 WL 12579822, at *12 (C.D. Cal. July 14, 2014) ("30% of the maximum possible amount of recovery" <u>before payment of attorneys' fees</u> was "a substantial recovery for the classes"); *Deaver v. Compass Bank*, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (10.7% of the total potential liability); *Greko v. Diesel U.S.A., Inc.*, No. 10–02576, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24% of damages); *Glass v. UBS Fin. Servs., Inc.*, No. 06–4068, 2007 WL 221862, at *4 (N.D. Cal. Jan.26, 2007) (25% to 35% of damages); *Rosales v. El Rancho Farms*, No. 1:12-01934, 2015 WL 4460918, at *14 (E.D. Cal. July 21, 2015) (27% to 45% of damages); *Cavazos v. Salas Concrete, Inc.*, No. 119-00062, 2022 WL 2918361, at *6 (E.D. Cal. July 25, 2022) (citing cases); *Castro v. Paragon Indus., Inc.*, No. 11900755, 2021 WL 2042333, at *5 (E.D. Cal. May 21, 2021) (20% of damages). *See also Morales*, 2013 WL 1704722, at *1-2 ($2M lodestar (more than 10 years ago) with $275,000 settlement); *Garcia*, 2012 WL 5985561, at *2 (D. Kan. Nov. 29, 2012), *aff'd*, 770 F.3d 1300 (10th Cir. 2014) ($3.2M lodestar 10 years ago with recovery of $533,011). The settlement is above the high end of recoveries in most similar cases and strongly favors granting Class Counsel's fees as requested.

### (2)  Novelty and Difficulty [*Kerr* factor 2 & LRCiv 54.2(c)(3)(B)].

No phase of this litigation was routine. Given the fact-specific and establishment-specific nature of DP's asserted exemptions, Counsel had to obtain discovery relevant to DP's operations across three states and five establishments. The sheer volume of relevant documents (exceeding 100,000) required substantial time and effort to cull and review. *Id.* at Bonnett Decl. ¶ 10. Similarly, the number of relevant witnesses was substantial, resulting in

Counsel having to take or defend 27 depositions. *Id.* At issue were multiple investigations by the U.S. DOL that required obtaining evidence through multiple FOIA requests. *Id.*

Given DP's arguments regarding differences across their multiple locations, Plaintiffs' Motion for Rule 23 Certification required substantial evidentiary support. Doc. 331 to 333. Plaintiffs also successfully sought reconsideration of the Court's decertification of the FLSA Collective and obtained a second supplemental FLSA certification. (Docs. 604 & 605).

DP's FLSA exemption defenses required addressing a number of difficult legal and factual issues at the dispositive motion and decertification stage. The 7(i) exemption has not been widely applied in the Ninth Circuit and required analysis and application of numerous, detailed, and technical requirements, which, to Counsel's knowledge, have never been applied in this Circuit with respect to a similar business. Similarly, there is no controlling precedent regarding the taxicab exemption,[8] which resulted in multiple disputes regarding the applicable legal test which likewise required examination and analysis of numerous fact-specific factors that had to be developed through discovery. *See, e.g.,* Docs. 498 & 499.

As a result of DP's failure to maintain (and failure to produce) required records of hours worked, Counsel had to develop an alternative means to reasonably estimate work time through the use of trip records and the assistance of a forensic accountant at substantial cost and requiring significant discovery and associated attorney time. Bonnett Decl. ¶¶77-84. This entailed both fact and expert discovery and related motions, as well as multiple supplemental reports. Damage calculations had to be revised multiple times with the addition of new employees and workweeks, continuing through the settlement process. *Id.* ¶ 83.

While the parties ultimately settled the FLSA and AMWA claims, they did so only after extensive mediation and negotiations and immediately before the Final Trial Management Conference. Consequently, Counsel was required to spend weeks working fulltime (occasionally nearly around the clock) to meet numerous pre-trial deadlines, including culling an enormous evidentiary record, while at the same time engaging in hard-fought

---

[8] Counsel located only one decades-old case in this District on the taxicab exemption. *Chao v. Am. Serv. Sys., Inc.*, No. 980174, 2001 WL 37131280 (D. Ariz. Oct. 9, 2001).

settlement negotiations. Bonnett Decl. ¶ 12. The pre-trial disclosures identified over 50 witnesses, including expert witnesses. Plaintiffs identified 705 trial exhibits that required review, organization, and multiple steps to make them trial ready. *Id.* ¶ 88; (Docs. 724 & 727-1, 746-1 & 746-2). Class Counsel filed or responded to six motions *in limine* and motions to exclude DP's expert witness and portions of his supplemental report. (Docs. 698 to 704, 712).

Throughout the case, Counsel and their staff worked diligently and conscientiously to obtain relevant evidence from Class Members and to ensure that hundreds of Class Members remained informed of the status and progress of the case, including by responding to hundreds of phone calls and e-mails, maintaining a web page dedicated to the case, and working with a third-party administrator to issue multiple notices. Bonnett Decl. ¶ 72.

**DP's Vigorous Defense and Litigation Tactics Greatly Magnified Work Required**

In the normal course, the complex nature of this case would result in an extraordinary number of hours worked by Class Counsel. *See, e.g.,* Lichten Decl. ¶¶ 10, 12. Here, however, the work required was unexpectedly and *greatly magnified* by DP's litigation strategy and tactics. Though DP had the right to defend this case tenaciously, that choice is a factor in evaluating the reasonableness of Class Counsel's fees. *See City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) ("[A defendant] cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quoting *Copeland v. Marshall*, 651 F.2d 880, 904 (D.C. Cir. 1980)); *Burgess v. Premier Corp.*, 727 F.2d 826, 841 (9th Cir. 1984) ("The total of attorney fees awarded in this case is substantial; however, it is justified…[A]lthough [Defendants] had the right to play hardball in contesting [Plaintiffs'] claims, it is also appropriate that [Defendants] bear the cost of their obstructionist strategy.").

Here, a substantial fee award is "the expected result of the way the defense was conducted" and further supports Class Counsel's fee request. *Cuff*, 768 F.3d at 610–11. As the Seventh Circuit made clear in *Cuff*:

> Fee-shifting statutes…are designed to prevent the potentially high costs of litigation from stifling justified claims. Without such a statute… [a] business that can establish a reputation for intransigence may end up not paying damages and not having to defend all that often either, because if a prevailing party who litigates to victory gets only a small award of fees the next would-be victim will see that litigation is futile and the employer won't have to repeat the costly

defense. That's why…hyperaggressive defendants who drive up the expense of litigation must pay the full costs, even if legal fees seem excessive in retrospect.

*Id. Accord Boconvi v. Velocity Express, LLC*, No. 17-02623, 2018 WL 2248988, at *5 (N.D. Cal. May 17, 2018) ("Defendants argue that Plaintiffs' fee application is out of line with awards in similar cases because their requested fees are over 36.6 times their actual recovery…This argument is a strawman and not persuasive…Defendants have been aware from the inception of the case that the FSLA is a fee-shifting statute…Defendants litigated this case in a way that was likely to produce high attorney fees. Not surprisingly, it did so. Plaintiffs' counsel are entitled to be compensated for the effort required to reach this stage of the litigation."); *Morales*, 2013 WL 1704722, at *2 (finding <u>8,407</u> hours expended reasonable in 4.5 year FLSA case with <u>$275,000</u> settlement, noting that "[m]uch of the time plaintiffs' counsel devoted to the action was necessitated by the defendant's aggressive tactics. Surely the defendant was aware that its litigation strategy generated legal work, billing and fees….In agreeing to pay for attorney fees as determined by the court, the defendant exposed itself in the settlement to the possibility of a large award of fees, especially in view of the contentious and lengthy history of this case"); *Torres*, 2012 WL 3878144, at *4 (S.D.N.Y. Aug. 6, 2012), *aff'd*, 519 F. App'x 1 (2d Cir. 2013) ("Given the Defendants' vigorous approach to litigating this case, they cannot now complain as to the amount that Plaintiffs were forced to expend in response.").

As the record reflects, nearly every aspect of this case was contested. *See also* Bonnett Decl. ¶ 61-62, 71, 74-76,79; Lichten Decl. ¶¶ 10-11; Petitti Decl. ¶ 7. DP even opposed Plaintiffs' request for a modest page extension, requiring the parties to brief and the Court to decide the issue. (Docs. 358, 378). Similarly, the routine task of scheduling the deposition of Defendant Kendra Kaplan was adversarial, requiring multiple interventions by the Court. (Docs. 280, 401). These discrete issues are merely emblematic of DP's strategy employed throughout the entire 4.5-year history of the case that required extensive additional work by Class Counsel. DP's approach to discovery, in particular, resulted in substantial additional work. Despite the case being subject to the MIDP Order pursuant to which DP was unilaterally obliged to independently identify and produce relevant evidence (Doc. 4 at 5 ¶ 3), from the get-go, DP required Class Counsel to expend substantial time and effort to get DP

to comply with its discovery obligations. *See*, *e.g.*, (Doc. 85 at 11-23) (Joint Case Management Report setting forth disputes related to DP's MIDP responses and discovery responses); Doc. 177 (ordering production of GPS records); Doc. 186 (ordering production of withheld documents); (Doc. 260) (ordering production of invoices); (Doc. 197 at 4-7) (documenting persistent efforts over <u>11 months</u> to get DP to produce ESI); (Doc. 697) (ordering production of personnel files, emails, and text messages for deponents).

In another representative example, DP asserted the advice of counsel defense, yet fought tooth and nail to prevent Plaintiffs from obtaining discovery unquestionably relevant to that defense. This included attempting to quash a deposition and document subpoena to the attorney whose advice DP claimed it relied upon while *failing to cite even a single case* where a court refused to allow the deposition of the attorney whose advice formed the basis of an advice of counsel defense. *See* Doc. 186 (ordering production of withheld documents); Doc. 265 (denying motion for reconsideration; denying motion to quash deposition and document subpoena). While DP originally produced a privilege log of 33 documents without alerting Plaintiffs to additional withheld documents, after Plaintiffs moved to compel production of documents on that log and the Court compelled production based on privilege waiver (Doc. 186), DP produced multiple "supplemental" privilege logs with an additional 1,957 entries and over 200 communications with their attorney, requiring Plaintiffs to seek additional documents that continued to be withheld despite the subpoena and the Court finding privilege waiver. *See* Doc. 171; Doc. 172-1 at Ex. 1; Doc. 197 at 2, 9-15.

At the same time, DP withheld highly relevant evidence only to disclose it long after the discovery and dispositive motion deadlines in an attempt to use the evidence to their advantage in responding to Plaintiffs' summary judgment motion and in advance of trial, requiring yet more motions and hearings. *See* Docs. 570, 601, 697. With respect to DP's attempt to belatedly produce revenue records by location which were necessary to support **<u>basic</u>** components of their 7(i) exemption defense, the Court remarked that the information "*was repeatedly requested by Plaintiffs in clear terms…Defendants provided excuses and told Plaintiffs' counsel that they were still working with their clients on getting the information in the correct*

*format…Defendants seemed to be merely engaging in a stalling tactic. This behavior runs contrary to the MIDP order and the applicable Federal Rules of Civil Procedure.*" (Doc. 570 at 4).

The Court's statement accurately reflects the seemingly endless stall and "meet and confer" tactics employed by DP and Class Counsel's tortuous efforts to obtain relevant evidence throughout the case. Bonnett Decl. ¶ 74. In relation to the revenue records, for example, Class Counsel documented *over ten express follow-up requests* for the information sought in a formal discovery request, raising the issue in the Joint Case Management Report, and numerous meet and confer conferences *over six months,* yet the records were only produced years later, after the dispositive motion deadline when the records became helpful to DP. (Doc. 554 at 1-3). Similarly, DP attempted to belatedly produce time records after summary judgment, long after the Court had expressly ordered them to be produced. (Doc. 601). *See also* Doc. 697 (limiting new production of documents to only additional deponents and requiring production of all communications of the deponents).

As the Court is aware, the Santa Cruz trip records were front and center in this case from the start,[9] yet unbeknownst to Plaintiffs, the records originally produced had been altered and retroactively changed by DP. Class Counsel only learned of this fact after noticing discrepancies and issuing a formal interrogatory. Bonnett Decl. ¶ 79. Then when Plaintiffs sought the unaltered records, DP claimed they did not possess them, requiring Counsel to prepare and serve a subpoena to the third-party vendor of the software used by DP. Only after service of the subpoena on the third party in New Jersey did DP suddenly concede that it possessed the unaltered trip records and agree to produce them. (Docs. 271, 275 at 3, 299). Similarly, DP moved to quash a subpoena to a third party when it had no standing to do so, requiring more motion practice and intervention by the Court. (Doc. 353). This, and similar strategies were present throughout the case and required additional work by Class Counsel.

DP also refused to admit basic, undisputed facts in their answer to the complaint and in responses to discovery requests, requiring substantial follow-up and work by Class Counsel

---

[9] *See* Joint Case Management Report (Doc. 85 at 16) (noting trip records are among records that "Plaintiffs believe are the most important documents in the case").

to clarify the record. For instance, DP repeatedly denied that it never paid overtime to Drivers when discovery proved there was absolutely no basis for such a denial, requiring Counsel to establish this basic fact through deposition testimony.[10] Bonnett Decl. ¶ 86. In another example, throughout the case, DP maintained an untenable position that it had kept the time records required by law, claiming there was no portion of the relevant time period in which such records were missing, again requiring substantial efforts to establish what should have been an uncontroverted fact through more time-consuming means. *Id.* ¶ 87.

DP also repeatedly failed to comply with the Local Rules which likewise resulted in more motion practice and work. For example, despite an express instruction from the Court, DP failed to comply with LRCiv. 56.1 on summary judgment, which required Counsel to undertake a time-consuming, exhaustive breakdown of each of DP's statement of facts. *See* Doc. 550 at 1-3; Doc. 593 at 3-5 (order addressing DP's failure to follow Local Rules and scheduling order). *See also* Doc. 329 (striking motion for failure to follow LRCiv 12.1(c); Doc. 390 (striking argument raised in reply in violation of LRCiv 7.2).

DP also vigorously sought decertification of the FLSA Collective and Rule 23 Class. But with respect to arguments on the 7(i) exemption on decertification, DP *failed to cite* or address controlling Circuit law, requiring Class Counsel to provide an extensive presentation of the controlling law. (Doc. 443 at 3-4, 9-14). DP's refusal to acknowledge the controlling precedent may have also played a role in the Court's initial granting of the decertification motion, subsequently vacated on reconsideration. (Doc. 604). Similarly, DP filed a motion to decertify the Rule 23 Class a mere four months after the Court granted class certification and relied almost entirely on the *same evidence* and *same arguments* submitted with its Response in Opposition to Plaintiffs' Motion for Rule 23 Certification (Doc. 342) which the Court had recently considered and rejected. (Doc. 427). In resolving that motion, the Court noted: "Many of Defendants' arguments center on damages and *were previously considered in the Court's ruling on class certification*…As the Court has *already stated*, calculating damages for individual

---

[10] Note the Fed. R. Civ. P. 37(c)(2) also provides for attorneys' fees upon proving a fact that was denied in a request for admissions absent recognized exceptions not present here.

class members is not the predominating question." (Doc. 585 at 4) (emphasis added). Notwithstanding the repetition, Plaintiffs still had to respond. Where W.C. Fields once advised that "if at first you don't succeed, try, try again. Then quit. Don't be a damn fool about it," here, DP took only the first piece of this advice as evidenced by DP moving for leave to file yet another motion to decertify on June 3, 2024, two days before the Final Trial Management Conference. (Doc. 761). While Class Counsel did not have to respond to that request given the Settlement, it is another clear example of DP's relentless litigation strategy that resulted in (and corroborates) the work expended by Class Counsel.

Class Counsel was also tasked with addressing DP's serial attempts to belatedly add affirmative defenses years into the litigation, including after the Court had expressly rejected its attempt to add the Motor Carrier Act ("MCA") exemption. *See* Doc. 408 (denying Defs.' Mot. to Amend Answer to Fourth Am. Compl. to add MCA defense); Doc. 569 (striking MCA and Section 259 defenses asserted in Answer to Fifth Am. Compl.).

*Twice* Class Counsel was forced to undertake extraordinary and time-consuming efforts to preemptively address DP's arbitration agreement instituted after the case was filed and its communications with class members including during the FLSA opt-in period, which resulted in multiple orders holding DP's arbitration agreement inapplicable to current employees, multiple Court-approved curative notices, and an order prohibiting further improper communications. (Docs. 95, 672). These extensive efforts required evidentiary support, briefing, and hearings. Undeterred, DP nonetheless *again* attempted to move to compel arbitration on the eve of trial, years into this case, and long after the deadline, which the Court properly rejected. *See* Doc. 760 at 3 ("The Court will not allow Defendants to ignore clear deadlines by leaning on a clarification they initially requested.").

Substantial work was also required in relation to DP's supplemental expert reports, including their expert's attempt to rely on new methodologies right before trial. (Doc. 712).[11]

In sum, extensive work in this case was required as a result of DP's litigation strategy and DP should not be heard to complain that they now must pay for that work.

---

[11] The Court did not reach the merits of that motion given the timing of the settlement.

### 2. Class Counsel's Hourly Rates Are Reasonable [*Kerr* factors 5 & LRCiv 54.2(c)(3)(E)].

"[A] 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious [] case." *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010). A reasonable rate is determined by the "prevailing market rate" in the relevant community. *Carson v. Billings Police Dep't*, 470 F.3d 889, 892 (9th Cir. 2006) ("prevailing market rate, not individual contract between the applicant attorney and the client, provides the standard for lodestar calculations"). The relevant community is the forum where the district court sits. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997). The Ninth Circuit has made clear that determining the prevailing market rate in the relevant community requires comparing the work done in the pending matter with other work done by lawyers of comparable skill, experience, and reputation engaged in equally complex federal litigation "regardless of the subject matter." *ThermoLife Int'l LLC v. Am. Fitness Wholesalers LLC*, No. CV-18-04189, 2020 WL 1694739, at *7 (D. Ariz. Apr. 7, 2020), *aff'd*, 831 F. App'x 325 (9th Cir. 2020) (citing *Prison Legal News v. Schwarzenegger*, 608 F.3d 446, 455 (9th Cir. 2010)). *See Prison Legal News*, 608 F.3d at 455 ("Although the state officials urge us to look only to the rates charged by other attorneys involved in prison litigation, the proper scope of comparison is not so limited, but rather extends to all attorneys in the relevant community engaged in 'equally complex Federal litigation,' no matter the subject matter.").

Given the complex nature of this case, the determination of reasonable rates should focus on like cases. *See De La Riva v. Houlihan Smith & Co.*, No. 10-8206, 2014 WL 7053772, at *2 (N.D. Ill. Dec. 12, 2014) ("Courts have recognized that class wage-and-hour cases, [] are more complex and require greater skill to litigate…than individual wage-and-hour cases."). Accordingly, it would be inappropriate to evaluate Counsel's hourly rate based on single-plaintiff FLSA cases that have awarded lower hourly rates. *See, e.g, Guzman v. Veraz Servs. LLC*, No. 22-00507-PHX-SMB, 2022 WL 16640671, at *2 (D. Ariz. Oct. 31, 2022) (noting 400 lawsuits filed by the same firm). Rather, "[t]he district court's inquiry must be limited to determining whether the fees requested by *this particular legal team* are justified for the particular work performed and the results achieved *in this particular case*." *Moreno*, 534 F.3d

at 1115 (9th Cir. 2008) (emphasis added). This standard is consistent with the Ninth Circuit's position that district courts should consider the overlapping *Kerr* factors as part of the initial lodestar determination. *Morales*, 96 F.3d at 364 n. 9. Here, the *Kerr* factors subsumed in the hourly rate and time expended inquiries support awarding Class Counsel's requested rates.

"Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases...are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990). Here, Class Counsel's hourly rates are squarely in line with the rates found in comparably complex cases in this District and are also supported by Class Counsel's awards in other cases and by supporting declarations. Bonnett Decl. ¶¶ 51-54; Petitti Decl. ¶¶ 6-13; Schleier Decl. ¶¶ 12-15. *See also* Lichten Decl. ¶ 8; *see, e.g., Bjordahl v. Qwest Commc'ns Int'l*, No. 2:09-0776, 2010 WL 11570515, at *2 (D. Ariz. Sept. 14, 2010) (FLSA case approving $575 hourly rate for partners with 20 years of experience and $145 for paralegals 14 years ago, which is $826 and $208 in 2024); *11333, Inc. v. Certain Underwriters at Lloyd's, London*, No. 14-02001, 2018 WL 1570236, at *6 (D. Ariz. Mar. 30, 2018) ("$500 is within the Phoenix market for highly skilled, experienced, and regarded lawyers for complex high-dollar commercial litigation," in 2018, which is $629 in 2024); *Collinge v. Intelliquick Delivery, Inc.*, et al. No. 12-0824 (D. Ariz. June 9, 2014) (FLSA case approving $525 for Martin & Bonnett partners in 2014, which equates to $691 in 2024); *Isom v. JDA Software Inc.*, 225 F. Supp. 3d 880, 889 (D. Ariz. 2016) (FMLA case finding $525 for D. Bonnett and $435 for J. Kroll "appropriate given the experience and skill of the attorneys and the customary rates in the local market" in 2016, which is $682 and $565 in 2024); *Frazier v. Honeywell Retirement Earnings Plan.*, No. 10-01618 (D. Ariz. July 22, 2015) (fee request based on $600 for senior Martin & Bonnett partners and $400 for junior partners in 2015 was "fair, reasonable, and appropriate in accordance with the standards set forth in this Circuit and Local Rule 54.2(c)(3)" which equates to $789 and $526 in 2024). *See also Roberts*, 938 F.3d at 1024 (abuse of discretion to determine prevailing rate based on rates awarded years earlier); *Moreno*, 534 F.3d at 1115 ("If the lodestar leads to an hourly rate that is higher than past practice, the court must award that rate[.]").

Even if the Court were to determine lower rates apply, an enhancement would be appropriate to ensure the Counsel is compensated at their "true market value, as demonstrated in [] the litigation," to ensure the fee award adequately attracts competent counsel, and to address the extraordinary outlay of expenses in this protracted litigation. *Perdue*, 559 U.S. at 553–56; *see Kelly*, 822 F.3d at 1105 (affirming district court's lodestar enhancement to ensure attorney's fee award was adequate to attract competent counsel); Bonnett Decl. ¶¶ 55, 89-94; Petitti Decl. ¶¶ 6-7, 9, 12; Schleier Decl. ¶¶ 9-10, 17.

### a) The skill required and the experience, reputation, and ability of Counsel. [*Kerr* factors 3 & 9, LRCiv 54.2(c)(3)(C) & (I)].

Class Counsel is one of a small number of plaintiffs' law firms in the Phoenix area that has the experience, skill, and knowledge of FLSA collective actions and wage and hour class actions that is willing to represent plaintiff employees on a contingency basis. Class Counsel are highly experienced and have an excellent reputation. Bonnett Decl. ¶¶ 23-26, 30, 34, 36, 58-59, 89-94; Lichten Decl. ¶ 8, 10-12-13; Petitti Decl. ¶¶ 6-12; Schleier Decl. ¶ 9-11. Class Counsel prosecuted this lawsuit against wage and hour attorneys from a national law firm in order to achieve a favorable Settlement, while also preserving the right to appeal dismissed claims. In the 4.5-year litigation history of the case, Counsel successfully certified the FLSA and Rule 23 classes, obtained numerous orders directing DP to produce relevant discovery, obtained reversal of the Court's decertification of the FLSA collective, defended DP's multiple decertification motions and attempts to add affirmative defenses, obtained supplemental FLSA certification, developed a sound theory to estimate hours worked, obtained summary judgment on key elements of the case including the misclassification of the Drivers, and successfully negotiated the Settlement while also preparing for trial. Counsel's skill and the quality of their representation is also shown by the fact that they were exceptionally proactive in monitoring and addressing ongoing conduct of DP that would bear on this case, including DP's attempt to institute a post-litigation arbitration agreement. Counsel twice obtained orders finding DP's communications related to those agreements to be coercive and the agreements inapplicable to current employees. Without their actions, the arbitration agreements had the potential to greatly undermine the class and collective claims.

**b) The contingent nature of the fee agreement and undesirability of the case [*Kerr* factors 6 & 10 LRCiv 54.2(c)(3)(F) & (K)].**

There is no question that this case was unusually risky for Class Counsel. Class Counsel is a small firm and taking on a case this size required a huge investment of the firm's time and resources (including hundreds of thousands of dollars in out-of-pocket expenses) and, as a consequence, the risks they undertook were enormous. The risks involved made this case particularly undesirable, especially from a contingency perspective, including the complexity and relative obscurity of the asserted FLSA exemptions, the closely-held nature of DP's businesses (requiring personal liability of individual defendants to ensure ultimate payment if successful), the resources demanded to develop estimates of hours worked (requiring an expert forensic accountant), the fact that DP was relying on a favorable decision from a Department of Labor investigator and an attorney opinion regarding the 7(i) exemption which had significant chances of limiting recoverable damages regardless of proving liability, and the need to establish an extensive evidentiary record to address the claims and class certification of employees across multiple states and locations. In fact, other lawyers turned down the case before it was accepted by Class Counsel. Bonnett Decl. ¶¶ 89-94; Schleier Decl. ¶¶ 9-10; Petitti Decl. ¶¶ 6-7, 9, 12.

"Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus.,* No. 11-04838, 2014 WL 2926210, at *8 (N.D. Cal. June 27, 2014). *See Franco v. Ruiz Food Prod.,* No. 10-02354, 2012 WL 5941801, at *17 (E.D. Cal. Nov. 27, 2012) ("No one expects a lawyer whose compensation is contingent upon his success to charge, when successful, as little as he would charge a client who in advance had agreed to pay for his services, regardless of success.") (*quoting In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 396–98 (S.D.N.Y. 1999)). Here, Counsel prosecuted this risky and challenging case on a wholly contingent basis, bearing the risk of recovering nothing after expending $389,000 in out-of-pocket costs and allocating thousands of their available work hours to this case over the last 4.5 years. This factor supports awarding the fees as requested. *See Rabin v. PricewaterhouseCoopers LLP,* No. 16-02276,

2021 WL 837626, at *8 (N.D. Cal. Feb. 4, 2021) ("the attorney's fee award should take into account the risk of representing Plaintiffs on a contingency basis over a period of four years of litigation"); *Romero*, 2024 WL 2389353, at *3 (contingency fee "supports awarding the full lodestar amount"); *Mumphrey v. Good Neighbor Cmty.*, No. 23-00923, 2023 WL 8702103, at *4 (D. Ariz. Dec. 15, 2023) (undesirability of contingent FLSA case supported lodestar).

### c) Time limitations imposed by the circumstances and preclusion of other employment. [*Kerr* factors 4, 7 & LRCiv 54.2(c)(3)(D) & (G)].

The risks here were heightened to Class Counsel—a small firm—which at times had to devote the majority of their firm's collective work hours to meet deadlines and required the firm to decline other work given the time commitments required by this case. Bonnett Decl. ¶¶12, 27, 29, 88, 91. On numerous occasions, the case required marathon work sessions where Class Counsel operated with "all hands on deck," including with respect to cross motions for summary judgment (while also responding to motion DP's decertification motion) and preparing for and defending multiple rounds of depositions in a short period of time right before trial, while at the same time meeting numerous pre-trial deadlines and negotiating the settlement. *Id.* ¶ 88, 91. These factors likewise support the requested fee award. *Cf. In re Washington Pub. Power Supply Sys. Sec. Litig.*, 779 F. Supp. 1063, 1102 (D. Ariz. 1990), *vacated in part*, 19 F.3d 1291 (9th Cir. 1994), *and aff'd in part*, 19 F.3d 1306 (9th Cir. 1994) ("Certainly there was a greater number of deadlines and crises, and more marathon work sessions, than in a typical action, but the legion of attorneys available to cope with those circumstances was correspondingly great.") (addressing *Kerr* factor 7).

### d) The nature and length of the professional relationship [*Kerr* factor 11 & LRCiv 54.2(c)(3)(L)].

Unlike attorneys with a longstanding relationship with their client, Class Counsel had to become acquainted with DP's business, the Drivers' work duties, obscure overtime exemptions, and the chauffeured transportation industry in general. This factor also supports the requested fee award. *Cf. Johnson v. AutoZone, Inc.*, No. 17-02941, 2019 WL 2288111, at *11 (N.D. Cal. May 29, 2019) ("The repeat nature, past length, and future prospects of the relationship…constitute the type of exceptional circumstance that justifies a downward-

departure from the typical, prevailing rates in the community for plaintiff's counsel's services."); *TrafficSchool.com v. eDriver, Inc.*, No. 06-7561, 2012 WL 12949932, at *11 (C.D. Cal. May 3, 2012) ("the eleventh factor ('nature and length of professional relationship with client') may weigh slightly in favor of reducing fees since Plaintiffs were long-term clients").

**D.    Class Counsel is Entitled to Nontaxable Expenses, Including Expert Fees.**

"In wage-and-hour cases, nontaxable expenses are routinely awarded as attorney fees." *Huyck v. Shilling-Devaney*, No. 3:18-00400, 2022 WL 16924130, at *5 (D. Or. Nov. 14, 2022) (citing *Mumford v. Eclectic Inst., Inc.*, 2016 WL 8711693, *8 (D. Or. Apr. 29, 2016) ("Under the FLSA, costs include reasonable out-of-pocket expenses.")). *See Bautista-Perez v. Juul Labs*, No. 20-01613, 2022 WL 2239838, at *9 (N.D. Cal. June 22, 2022) (FLSA case stating "the costs Class Counsel incurred—which include mediation fees, filing fees, process of service fees, electronic research, postage and travel—reflect the type of expenses routinely charged to paying clients") (citing *Torres v. Pick-A-Part Auto Wrecking*, No. 116-01915, 2018 WL 3570238, at *9 (E.D. Cal. July 23, 2018) (finding that ordinary out-of-pocket expenses include "(1) meals, hotels, and transportation; (2) photocopies; (3) postage, telephone, and fax; (4) filing fees; (5) messenger and overnight delivery; (6) online legal research; (7) class action notices; (8) experts, consultants, and investigators; and (9) mediation fees") and *In re Immune Response Secs. Litig.*, 497 F. Supp. 2d 1166, 1177 (S.D. Cal. 2007) (same)); *Contreras v. Armstrong Flooring, Inc.*, No. 20-3087, 2021 WL 4352299, at *12 (C.D. Cal. July 6, 2021) (wage and hour class action); *Boconvi*, 2018 WL 2248988, at *5 (awarding expert costs in FLSA collective action); *Weist v. City of Davis*, No. 16-01683, 2021 WL 601103, at *4 (E.D. Cal. Feb. 16, 2021) (FLSA case awarding reimbursement of costs for expert consultants "retained to analyze and determine the damages"); *Acevedo v. City of Los Angeles*, No. 145661, 2016 WL 11525321, at *10 (C.D. Cal. Dec. 2, 2016) (recoverable costs in FLSA action include "those for experts, printing, mediation, transcripts, pro hac vice applications, and a court service" as well as reasonable travel costs); *Morris v. Fid. Invs.*, No. 17-06027, 2019 WL 4040069, at *3 (N.D. Cal. Aug. 26, 2019) (FLSA collective action, noting that costs, including for a data expert, "were a reasonable and necessary part of the litigation, and are of a type customarily billed to a fee-

paying client"); *Morales*, 2013 WL 1704722, at *11 ("The use of experts was reasonable and necessary to the action in order to establish damages had the action proceeded to trial."). *See also Brown v. China Integrated Energy Inc.*, No. 1102559, 2016 WL 11757878, at *13 (C.D. Cal. July 22, 2016) (expert fees may be reimbursed even where expert is not admitted to testify at trial but where expert reports and pre-trial testimony were "helpful to the litigation").

The Ninth Circuit has also long held that district courts have discretion to reimburse expert witness fees if the expert's services were "crucial or indispensable in establishing the prevailing party's case or defense." *United States v. City of Twin Falls, Idaho*, 806 F.2d 862, 878 (9th Cir. 1986). *See Rodriquez v. Farmers Ins. Co. of Arizona*, 649 F. App'x 620 (9th Cir. 2016) ("District courts have discretion to reimburse expert witness fees if the expert's services were 'crucial or indispensable' to the action."); *Ruiz v. XPO Last Mile, Inc.*, No. 5-2125, 2017 WL 6513962, at *8 (S.D. Cal. Dec. 20, 2017) (expert testimony on damages in FLSA case was "crucial to the litigation and recoverable"). The authority to award expert costs not otherwise provided by statute is part of the court's "'inherent equitable discretionary authority.'" *Twin Falls*, 806 F.2d at 878 (quoting *Shakey's Inc. v. Covalt*, 704 F.2d 426 (9th Cir.1983)).

Similarly, the AMWA provides the Court with the express "authority to order *any* other appropriate legal or equitable relief for violations of [AMWA]" and to order payment of "other amounts" without qualification in addition to the unpaid wages, attorneys' fees, and costs under. A.R.S. § 23-364(G). Accordingly, there is no question the Court may order reimbursement for the nontaxable costs and expenses in this case.

Here, the work completed by Plaintiffs' damages expert was "crucial and indispensable" to the Drivers' ability to prosecute their claims, including obtaining class certification, defeating DP's motions for decertification, establishing summary judgment as to liability, the ability of Plaintiffs to present their claims to the jury at trial (if necessary), reaching settlement, developing an allocation formula and obtaining settlement approval. Bonnett Decl. ¶ 108.[12] These costs are therefore recoverable. *Rodriquez*, 649 F. App'x at 620.

---

[12] Expert fees for work done after settlement are recoverable as settlement administration costs, including determining the settlement allocations included in the settlement notices. *See,*

*See also Strauch*, 2020 WL 4289955, at *16 (the court "recognizes the value that consultants may provide in complex litigation, and understands that the 'work on the Breshears Report' in this action 'helped Class Counsel analyze CSC's flawed data to sort out the errors and omissions in CSC's data productions…to the benefit of the classes'").

Importantly, Plaintiffs' damages expert's work was necessary because DP failed to maintain the records of hours worked required under the FLSA and Arizona law. (Doc. 593 at 16).[13] DP's failure to maintain required records, including for years after the case was filed, resulted in having to reasonably estimate hours worked for 694 employees who worked for DP over a period of seven years (December 2016 to January 2024) using *hundreds of thousands* of trip records. Bonnett Decl. ¶ 108. Plaintiffs' expert also had to supplement his report multiple times to account for additional employees and workdays as DP continued their recordkeeping and wage violations long after the case was filed. DP also chose to challenge Plaintiffs' expert through their own hired expert, resulting in Plaintiffs' expert having to respond through multiple rebuttal reports.

DP has indicated it may oppose recovery of amounts paid to Plaintiffs' expert. However, denying recovery of the substantial sums that were necessary and beneficial to the Class but are the direct result of DP's *own* failure to maintain records of hours worked would undermine the fundamental purposes of the FLSA, the AMWA, and those statutes' fee-shifting and recordkeeping provisions which are designed to encourage litigants to enforce their rights to unpaid wages, even where the recovery may be less than cost of prosecuting claims. *See United Slate, Tile & Composition Roofers Ass'n, Loc.* 307 *v. G & M Roofing Co.*, 732 F.2d 495, 501–02 (6th Cir. 1984) ("The availability and award of attorney fees under § 216(b)

---

*e.g., Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) ("Courts regularly award administrative costs associated with providing notice to the class.").

[13] The FLSA requires employers to keep records of, *inter alia*, employees' hours worked each workday and total hours worked each workweek; the regular hourly rate of pay for any week in which overtime is due; the total daily or weekly straight wages due; and total premium pay for overtime hours. 29 U.S.C. § 211(c); 29 C.F.R. § 516.2. The AMWA required DP to "maintain payroll records showing the hours worked for each day worked…" A.R.S. § 23-364(D). *See also* Ariz. Admin. Code R20-5-1210 (setting forth more detailed recordkeeping requirements for work hours).

1  must reflect the obvious congressional intent that the policies enunciated in § 202 be

2  vindicated…the purpose of § 216(b) is to insure effective access to the judicial process by

3  providing attorney fees for prevailing plaintiffs with wage and hour grievances; '[o]bviously

4  Congress intended that the wronged employee should receive his full wages...without

5  incurring **any expense** for legal fees or costs.'") (quoting *Maddrix v. Dize*, 153 F.2d 274, 275–

6  76 (4th Cir. 1946) (emphasis added). *See Pickett v. Beard*, No. 1:13-0084, 2014 WL 467330, at

7  *5 (E.D. Cal. Feb. 5, 2014) (citing a long line of cases that "reflect that the intent behind §

8  216(b) was to allow employees to obtain payment owed under the FLSA in court without the

9  employee incurring legal fees and expenses, and to encourage attorneys to take FLSA case").

10      The recordkeeping and fee-shifting provisions of the FLSA and AMWA would be

11  eviscerated if there were no ability to shift the substantial costs associated with experts needed

12  to determine hours worked where an employer fails to maintain records required by law. This

13  is especially true here, where the Court held civil penalties for non-compliance with

14  recordkeeping requirements are not available to private litigants. (Doc. 590 at 2-3). Allowing

15  DP to escape liability for any of the expenses incurred in this litigation would negate *any*

16  consequence for its non-compliance and embolden employers to disregard their legal

17  obligations. Requiring low wage workers or their counsel to shoulder the burden of such costs

18  would result in fundamental violations like those in this case going unchecked since the

19  expenses needed to prove damages and hours worked would often eat up whatever benefits

20  the litigation might produce and/or impose a backbreaking burden on low wage litigants and

21  their counsel seeking to enforce minimum wage rights. The Court should exercise its

22  authority under Ninth Circuit precedent and the AMWA to order that DP reimburse the

23  expert costs incurred.

## III.  CONCLUSION

25      For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the

26  Court enter an order directing payment by Defendants of $4,250,000 in attorneys' fees and

27  an additional $389,385 in costs and expenses.

28                                               **MARTIN & BONNETT, P.L.L.C.**

By:_ */s/ Daniel Bonnett*

Daniel L. Bonnett
Susan Martin
Jennifer Kroll
Michael M. Licata
4647 N. 32nd Street, Suite 185
Phoenix, AZ 85018
(602) 240-6900
*Attorneys for Plaintiffs*

## LRCiv 54. 2 STATEMENT OF CONSULTATION

Pursuant to LRCiv 52.4(d)(1), the undersigned certifies that an effort was made to arrange a meeting for the purposes of an in-person discussion regarding Plaintiffs' and Class Counsel's request for attorneys' fees, costs, and expenses. Undersigned counsel sent an email to Defendants' attorneys on July 29, 2024 advising of the amount of fees and costs intended to be requested by Class Counsel and suggested a personal consultation. Defense counsel, Trey Lynn, responded the following day via email with a counteroffer. It was determined that the parties were significantly apart in their respective positions and Class Counsel advised that further discussions would be non-productive if Defendants did not reassess their position. Class Counsel indicated a willingness to engage in further discussions on that condition and also indicated they remain open to discussions about the fee application.

**/s/Michael Licata**