| | |
|---|---|
| 1 | Susan Martin (AZ#014226) |
| 2 | Daniel L. Bonnett (AZ#014127) |
| | Jennifer Kroll (AZ#019859) |
| 3 | Michael M. Licata (AZ#033941) |
| | Martin & Bonnett, P.L.L.C. |
| 4 | 4647 N. 32nd Street, Suite 185 |
| 5 | Phoenix, Arizona 85018 |
| | Telephone: (602) 240-6900 |
| 6 | Facsimile: (602) 240-2345 |
| 7 | smartin@martinbonnett.com |
| | dbonnett@martinbonnett.com |
| 8 | jkroll@martinbonnett.com |
| | mlicata@martinbonnett.com |
| 9 | *Attorneys for Plaintiffs* |

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kelli Salazar, Wayne Carpenter, Rodney Lopez, and Gregory Hanna, Annette Howard, Brian Husted, and Kathleen Darnell, individually and on behalf of other similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> Driver Provider Phoenix, LLC; Driver Provider Leasing, LLC; Innovative Transportation of Sedona, LLC; Innovative Transportation Solutions of Tucson, LLC; Innovative Transportation Solutions, Inc. (Arizona); Innovative Transportation Solutions, Inc. (Utah); Innovative Transportation Solutions, LLC; Driver Provider Management LLC; Jason Kaplan; Kendra Kaplan; Stephen Kaplan and Barbara Kaplan, husband and wife; Barry Gross and Jane Doe Gross, husband and wife; and Does 1-10. <br><br> Defendants. | Case No.: CV19-05760-SMB <br><br> **PLAINTIFFS' MOTION FOR FINAL APPROVAL OF COLLECTIVE AND CLASS ACTION SETTLEMENT** |

**INTRODUCTION**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure and the Order of this Court dated June 10, 2024 (Doc. 780) preliminarily approving the Class Action Settlement Agreement, and in accordance with the provisions of the Settlement Agreement (Doc. 777-1), Named Plaintiffs, on behalf of themselves and the Settlement Class Members,[1] hereby respectfully request that the Court grant Final Approval of the Settlement Agreement to resolve the claims for minimum wages and overtime under the Fair Labor Standards Act ("FLSA") and minimum wages under Arizona Minimum Wage Act ("AMWA"), as well as the Named Plaintiffs' claims for straight-time under the Arizona Wage Act ("AWA"). This motion is supported by the September 18, 2024 Declaration of Michael Licata in Support of Motion for Final Approval of Class Action Settlement ("Licata Decl.") with attached exhibits, the September 18, 2024 Declaration of Ann Linton of Atticus Administration, LLC (the Settlement Administrator) ("Linton Decl."), and the record before the Court.

The facts, summary of claims, procedural history, and terms of the Settlement Agreement are set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 777 at 2-4). On June 10, 2024, the Court preliminarily approved the Class Action Settlement, modified the certified Settlement Class under Fed. R. Civ. P. 23(b)(3), approved Atticus Administration LLC as the Settlement Administrator, approved the form and content of the Class Notice, and approved the methods for contacting and locating Class Members and distributing the Class Notice. (Doc. 780 at 14-15). Plaintiffs filed their Application for Service Awards to be paid to Named Plaintiffs and FLSA Collective Members who were deposed by Defendants on August 9, 2024. (Doc. 792). Plaintiffs filed their Application for Award of Attorneys' Fees, Costs, and Expenses on August 2, 2024 (Doc. 788), Defendants filed a response thereto on August 26, 2024 (Doc. 798) and Plaintiffs filed a reply on September 13, 2024 (Doc. 812).

The Court's preliminary approval Order found that the Settlement appears to be

---

[1] Capitalized terms have the meanings in the Settlement Agreement (Doc. 777-1).

fair, adequate, and reasonable. (Doc. 780).[2] Nothing has occurred since preliminary approval to undermine that finding. To the contrary, as set forth below, the reaction of the class members to the proposed settlement—the only factor not addressed in preliminary motion (Doc. 777 at 23-24)—now also supports approval of the Settlement Agreement.

**A.     Terms of the Settlement.**

A detailed summary of the Settlement Agreement is set forth in Plaintiffs' Unopposed Motion for Preliminary Approval (Doc. 777 at 4-14). As the Court will recall, the Settlement Agreement provides for a Settlement Amount of $2.5 million, $2 million of which is not subject to reversion. The Settlement Agreement provides that $500,000 of the Settlement Amount allocated to the Rule 23 Claims under the AMWA is payable on a claims-made basis subject to reversion. All Settlement Class Members who have already opted in (the "FLSA Collective Members") did not need to do anything further to receive their Individual Settlement Awards for minimum wages and overtime under the FLSA. Settlement Class Members who are both FLSA Collective Members and Rule 23 Class members were required to submit a Claim Form to receive the difference between their Individual Settlement Award for their minimum wage damages under the FLSA and their Individual Settlement Award for minimum wage damages under the AMWA, as determined by the allocation formula preliminarily approved by the Court. In the event a Rule 23 Class Member (including FLSA Collective Members who were also Rule 23 Class Members) did not submit a claim form to participate in the Settlement, the amount allocated for that Class Member's Individual Settlement Award under the AMWA will revert to Defendants.

The $2.5 million Settlement Amount was $1 million more than the $1.5M offer

---

[2] Under Fed R. Civ. P. 23(e)(1), in order to grant preliminary approval, the Court must find the settlement is likely to receive final approval. *See* Advisory Committee Note to Fed. R. Civ. P. 23. Subdivision (e)(1) ("The decision to give notice of a proposed settlement to the class is an important event. It should be based on a solid record supporting the conclusion that the proposed settlement will likely earn final approval after notice and an opportunity to object.").

of judgment made by Defendants just three days prior to agreeing to the principal terms of the settlement and substantially more than the damages estimated by DP's expert. (Doc. 704-3); (Doc. 773 at ¶ 20). In terms of recovery of potential damages, the settlement is above the high end of recoveries in most similar cases and strongly favors granting approval of the Settlement Agreement. *See* Doc. 777 at 20-21. In wage and hour cases, courts also consider the recovery in terms of wages, not just statutory damages. In *Senne v. Kansas City Royals Baseball Corp.*, No. 14-CV-00608 JCS, 2023 WL 2699972, at *19 (N.D. Cal. Mar. 29, 2023), for instance, the court found "exceptional results for the class" where the recovery was "89 percent of the class members' unpaid wages." Using the same metric here, collective members will receive the equivalent of 120% of unpaid overtime wages and Rule 23 class members will receive the equivalent of 200% of unpaid minimum wages. (Doc. 813 ¶¶ 2-4). Some Settlement Class Members are receiving sums approaching or exceeding $100,000, 67 Settlement Class Members are receiving over $10,000, and 109 are receiving over $5,000. *Id*. Defendants are required to pay employer tax contributions and all settlement administration costs. Attorneys' fees will not be paid by Settlement Class Members, but instead will be paid directly by Defendants, another substantial benefit to the Settlement Class Members. *See Bolding v. Banner Bank*, No. 17-00601, 2024 WL 755903, at *3 (W.D. Wash. Feb. 23, 2024) ("The reasonably anticipated benefit of the settlement includes payment for the legal services that were required to create the settlement fund, thereby releasing class members from any equitable (or contractual) duty to pay for those services."). The Settlement also protects the Settlement Class Members' rights to appeal the dismissal of the AWA overtime claim and the AMWA civil penalties issue.

As detailed in Plaintiffs' Unopposed Motion for Preliminary Approval (Doc. 777 at 9-10), and Plaintiffs' Application for Service Awards to be paid to Named Plaintiffs and FLSA Collective Members who were deposed by Defendants (Doc. 792), Class

3

Counsel is requesting Service Awards to four of the seven Named Plaintiffs[3] and the ten FLSA Collective Members who were deposed by Defendants totaling $100,000. As detailed in the Application for Service Awards, Named Plaintiffs and the FLSA deponents put in significant efforts that helped achieve the Settlement and the proposed Service Awards in the amounts preliminarily approved by the Court are reasonable both as a proportion to the overall Settlement Fund and in light of the time and effort expended. *See Ross v. U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *2 (N.D. Cal. Sept. 29, 2010) ($20,000 for four class representatives was appropriate service award); Bolding, 2024 WL 755903, at *3 ($20,000 for each for class representatives in FLSA case); *Singer v. Becton, Dickinson & Co.*, No. 08-821, 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) ($25,000 case contribution award in wage and hour case, noting "[t]he $25,000 incentive award is also well within the acceptable range awarded in similar cases.").

Additionally, the Settlement Agreement provides for individual damage awards for Plaintiffs Lopez and Hanna's straight time claims under the AWA for a total of $6,429.31. As explained in Plaintiffs' April 29, 2024 Motion (Doc. 777 at 9), Plaintiff Lopez and Hanna are the only Named Plaintiffs who have straight time claims under the AWA within the limitations period. The resolution of Plaintiffs Lopez and Hanna's straight time claims is the result of a proposed allocation of a portion of the Settlement Amount to compensate them for their individual damages under the AWA that are not part of their FLSA or AMWA damage claims, with each receiving 67.12% of the amounts determined as damages for their claims under the AWA for unpaid straight time as determined by Plaintiffs' expert. This amounts to approximately $311.28 for Plaintiff Lopez and $6,115.03 for Plaintiff Hanna. *See Id.* The requested Individual Damages Awards will be made on the same basis as payment of the Class Members' Individual Settlement Awards.

---

[3] Plaintiffs Howard, Husted, and Darnell were added to the lawsuit in Plaintiff's Sixth Amended Complaint (Doc. 804) on August 28, 2024 for the purposes standing for any appeal consistent with the terms of the Settlement Agreement.

4

1       The Effective Date of the Settlement is 30 days from the Final Approval Order provided no appeal is filed by any Settlement Class Member. Individual Settlement Awards to Settlement Class Members will be paid by the Settlement Administrator within twenty (20) days following the Effective Date. Individual Settlement Awards to the Settlement Class Members will be treated as 50% wages and 50% as 1099 income. Service Awards will be treated as 1099 income. On the wage portion of the Individual Settlement Awards, Defendants are required to pay the employer's share of the payroll taxes and Settlement Class Members shall pay the employee's share.

      The Settlement Agreement provides that if a Class Member files a timely appeal, Defendants shall deposit the Final Settlement Amount with the Settlement Administrator thirty (30) days following the Final Approval Order, and the Settlement Administrator shall hold the Final Settlement Amount in an interest-bearing escrow account pending the appeal and, upon completion of the appeal, pay the Final Settlement Amount to the Settlement Class Members with interest. Doc. 777-1 at 23. Per the terms of the Settlement Agreement, Class Counsel's Application for Attorneys' Fees, Costs, and Expenses shall have no effect on the Effective Date of the Settlement Agreement, irrespective of whether or not Class Counsel's Attorneys' Fees and Costs Award is appealed by Class Counsel or Defendants. *Id.* at 27.

      A list of each Settlement Class Member's final Individual Settlement Award is attached as Exhibit 1 to the Licata Declaration (filed under seal).[4]

## B.  Claims Made and Reaction of Class Members.

      Reaction to the settlement has been very positive. The deadline to file objections was August 23, 2024, and the deadline to request exclusion from the settlement was September 7, 2024. Only one Settlement Class Member requested to be excluded from the settlement and <u>no Settlement Class Members objected to the Settlement Agreement</u>. Linton Decl. ¶ 12. This too strongly supports approval of the Settlement. *See Chun-Hoon*

---

[4] If the Court approves Service Awards in an amount that differs from the amounts requested, Plaintiffs will submit a final Plan of Allocation on or before three (3) days after the ruling on the motion for final approval as required by the Settlement Agreement.

*v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that "zero objections and sixteen opt-outs (comprising 4.86% of the class)…strongly supports settlement"); *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving a settlement where the opt-out rate was 2%), *aff'd*, 331 F. App'x 452 (9th Cir. 2009). Many of the Settlement Class Members have also expressed to Class Counsel that they are very pleased with the Settlement and the amounts they are receiving. Licata Decl. at ¶ 4. Accordingly, the overwhelming positive reaction of the class members supports granting final approval of the Settlement.

      The claims rate also supports approval of the settlement, especially considering the majority of the reversionary fund (78%, or $391,184) has been claimed and 95.6% of the total Settlement Fund will be distributed to Settlement Class Members. *See Four in One Co. v. S.K. Foods, L.P.*, No. 2:08-3017, 2014 WL 4078232, at *11 (E.D. Cal. Aug. 14, 2014) (27.5 percent claim rate was "relatively favorable") (discussing cases approving settlements with claims rates of 1-2%); *Vanwagoner v. Siemens Indus., Inc.*, No. 2:13-01303-KJM, 2014 WL 7273642, at *8 (E.D. Cal. Dec. 17, 2014) (45 percent claim rate in wage & hour case weighed in favor of approving settlement).

      The Settlement Administrator worked diligently to ensure that all Class Members received the Class Notice. Pursuant to the Court's Order granting preliminary approval and the terms of the Settlement Agreement, the Settlement Administrator mailed the Class Notices to 692 Class members by regular U.S. mail on July 24, 2024. *See* Linton Decl. at ¶ 4. The Settlement Administrator also distributed the Class Notice via email to those 678 Class Members for whom the parties had email addresses. *Id*. at ¶ 5. The Settlement Administrator also sent 544 Notices by text message to Settlement Class Members for whom cell phone numbers were available. *Id*. at 6. The Settlement Administrator also posted the Class Notice on a dedicated website regarding the Settlement as described in Section V of the Settlement Agreement. *Id*. at ¶ 3. Class Counsel communicated with multiple Class Members via email and telephone to ensure receipt of the Class Notice, to assist with preparation of Claim Forms and Change of Information Forms, and to answer questions from Class Members about the Settlement.

1  Licata Decl. at ¶ 4. Class Counsel also answered questions and responded to inquiries
2  from numerous Settlement Class Members. *Id*.

3       Following the distribution of the Class Notices, the Settlement Administrator
4  received a total of 187 returned mailings as undeliverable, 183 of which had no
5  forwarding address. In accordance with Section V of the Settlement Agreement, the
6  Settlement Administrator conducted a skip trace for each of the Class Members whose
7  mailed Class Notice was returned. The Settlement Administrator sent a second mailing
8  by regular U.S. Mail to the Class Members whose first mailed notices had been returned
9  and for whom updated address and contact information had been obtained.[5] Linton Decl.
10 ¶ 7.

11      After distribution of the Class Notice, 269 out of 499 (or 53%) of Rule 23 Class
12 Members (including FLSA Collective Members who are also Rule 23 Class Members)
13 who could benefit from the submission of a claim form submitted one. Linton Decl. ¶ 8.
14 Many of the Rule 23 Class Members who did not submit a claim form did not have
15 substantial minimum wage damages. In total (including the $100,000 allocated for
16 requested service awards[6] and amounts allocated for Named Plaintiffs' AWA claims)
17 $2,391,184.01 of the $2.5 million Settlement Fund will be distributed to Settlement Class
18 Members, which is 95.6% of the negotiated $2.5 million. Linton Decl. ¶ 11.

19 **C.     The Settlement is Fair, Reasonable and Adequate.**

20      Plaintiffs have addressed each of the factors for determining the reasonableness
21 of the Settlement Agreement in detail in their Motion for Preliminary Approval (Doc.

---

[5] The skip traces employed by the Settlement Administrator have been widely accepted as a "reasonable search" that "satisfies due process." *In re MyFord Touch Consumer Litig.*, 13-CV-03072-EMC, 2019 WL 1411510, at *11 (N.D. Cal. Mar. 28, 2019); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 254 (N.D. Cal. 2015) (approving system of mailing settlement notices to last-known addresses and using skip traces to re-send undeliverable mail as "reasonably calculated to provide notice to class members"); *Gundersen v. Lennar Associates* Mgmt., LLC, C09-02270 CRB, 2011 WL 13250650, at *3 (N.D. Cal. July 11, 2011) (same).

[6] If the Court does not approve the service awards as requested, any amounts not awarded by the Court for Service Awards will be redistributed to FLSA Collective Members pursuant to the Settlement Agreement. (Doc. 777-1 at 18 ¶ E).

7

777 at 15-29), which Plaintiffs incorporate herein by reference. In addition, as to the amount offered in the settlement, the Court may now more accurately determine the value of the settlement. *See Harris v. Vector Marketing Corp.*, No. C–08–5198 EMC, 2011 WL 1627973 at *13-14 (N.D. Cal. April 29, 2011) (recognizing that the actual value of the settlement can be more accurately assessed at a final fairness hearing after submission of claims). As set forth above, Defendants are set to pay out $2,391,184.01 or 95.6% of the negotiated $2,500,000 Settlement Amount, with only $108,815.99 or 4.35% reverting to Defendants. This is an excellent result for Settlement Class Members, and the reversion to Defendants is far less than amounts routinely approved by courts on final approval of class action settlements. *See Nur v. Tatitlek Support Services, Inc.*, 15CV00094SVWJPRX, 2016 WL 7626144, at *3 (C.D. Cal. Aug. 23, 2016) (FLSA case where 40% of settlement amount reverted to the defendant); *Wallace v. Countrywide Home Loans, Inc.*, SACV081463JLSMLGX, 2015 WL 13284517, at *6 (C.D. Cal. Apr. 17, 2015) (granting final approval where "76% of the funds originally set aside for payment to Class Members will revert back to Defendants"). Accordingly, the extremely high percentage of the Settlement Amount that will ultimately be paid by Defendants further supports finding the Settlement Agreement to be fair, reasonable, and adequate.

## CONCLUSION

For the foregoing reasons, and for the reasons set forth in Plaintiffs' Motion for Preliminary Approval (Doc. 777), Plaintiffs respectfully request that the Court enter the proposed Order of Final Approval with Plaintiffs' Motion for Final Approval.

Respectfully Submitted this 18th day of September, 2024.

**MARTIN & BONNETT, P.L.L.C.**

By: /s/ Michael Licata
    Daniel L. Bonnett
    Susan Martin
    Jennifer Kroll
    Michael M. Licata
    4647 N. 32nd Street, Suite 185

8

Phoenix, AZ 85018
(602) 240-6900
*Attorneys for Plaintiffs*